## MORTENSEN et al. v. UNITED STATES.

### No. 12531.

Circuit Court of Appeals, Eighth Circuit.

Nov. 23, 1943.

Eugene D. O'Sullivan, of Omaha, Neb. (Thomas W. Lanigan and William P. Mullen, both of Grand Island, Neb., on the brief), for appellants.

Emmet L. Murphy, Asst. U. S. Atty., of Omaha, Neb. (Joseph T. Votava, U. S. Atty., of Omaha, Neb., Fred G. Hawxby, Asst. U. S. Atty., of Lincoln, Neb., and William H. Meier, Asst. U. S. Atty., of Omaha, Neb., on the brief), for appellee.

Before WOODROUGH, THOMAS and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

Appellants were convicted under the White-Slave Traffic Act, 36 Stat. 825, 18 U.S.C.A. § 397 et seq., for transporting two girls from Salt Lake City, Utah, to Grand Island, Nebraska, for the purpose of prostitution and debauchery.

■■ They contend that the transportation could not possibly constitute a viola-tion of the Act, because it was merely part of "a circle vacation trip", made from Grand Island, Nebraska, to Yellowstone National Park and Salt Lake City, Utah, and return. They say—to quote the language of their brief—that "the transportation which took place was not transportation in interstate commerce within the intent or meaning of the law, i. e. transportation from a point in one state to a point in another state, but was a transportation from Grand Island, Nebraska, to Grand Island, Nebraska, and the touring through other states on the circle vacation trip was a mere incident to the through transportation and not transportation from one state to another—the transportation denounced by the law."

Appellants are mistaken as to the proper construction of the White-Slave Traffic Act and its object. The Act is entitled "An Act to further regulate interstate and foreign commerce by prohibiting the transportation therein for immoral purposes of women and girls, and for other purposes." Its first section, 18 U.S.C.A. § 397, defines "interstate commerce" for purposes of the Act as "transportation from any State or Territory or the District of Columbia to any other State or Territory or the District of Columbia". Its second section, 18 U.S.C.A. § 398, provides that "Any person who shall knowingly transport or cause to be transported, or aid or assist in obtaining transportation for, or in transporting, in interstate or foreign commerce, * * * any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, * * * shall be deemed guilty of a felony," etc. This section of the Act plainly was intended to prohibit anyone from bringing a woman or girl across any state line, or of having her so brought, for the purpose of prostitution, etc.—which the jury has found was appellants' intent here in returning the girls to Nebraska. Congress has made no distinction in the Act, such as appellants would have us draw, between the crossing of a state line with an immoral purpose as a matter of a migrant destination and the crossing of a state line with such a purpose as part of some circle or return trip.[1] The statute entirely closes the doors of in-

<hr />

[1] The evidence to show the claimed circular trip in the present case is not properly before us, because appellants failed to have a bill of exceptions settled in the district court within the necessary time, and their application for an extension subsequently made to this court was denied by another division of judges of the court. In view of the earnest contention made here that, if the evidence had been permit-

terstate commerce to any and all such transportation.

The return of the girls in the present case by automobile from Salt Lake City, Utah, to Grand Island, Nebraska, was therefore inarguably transportation in interstate commerce, as defined in section 1 of the Act. With equal certainty, their return across intervening state lines, with the intent to have them re-enter the house of prostitution operated by appellants at Grand Island, Nebraska, was a transporting in interstate commerce "for the purpose of prostitution or debauchery", within the meaning of section 2 of the Act.

The reported decisions confirm this construction of the Act.[2] In Burgess v. United States, 54 App.D.C. 71, 294 F. 1002, a conviction was upheld, where the defendant, who already had a wife, took a woman from Washington, D. C., to Alexandria, Virginia, in order to marry her, and returned after the ceremony to the District of Columbia, where they cohabited. In Corbett v. United States, 9 Cir., 299 F. 27, the defendant was convicted of causing a woman to be transported for immoral purposes from Spokane, Washington, to Boise, Idaho, where the transportation was merely a return by the woman from a visit made to some of her children, who were ill in Spokane. Defendant and the woman had been illicitly cohabiting in Boise before the trip was made; it was intended that the woman should simply make a visit to Spokane and should return; defendant paid the expenses of the trip; and, after the woman's return to Boise, the parties resumed their cohabitation. The situation is epitomized in the second syllabus point of the case as follows: "That defendant paid for the transportation of a woman from the place they then were into another state, where she went alone, and return, with the intention that she should return, does not prevent the return transportation, if with the requisite intent, from being a violation of White Slave Traffic Act." In United States v. Oriolo, D.C.E.D.Pa., 49 F.Supp. 226, the defendant had taken a woman, who was working for him as a prostitute in Philadelphia, Pa., from that city to Atlantic City, New Jersey, for a day's outing, with the intention that she should resume her prostitution on their return to Philadelphia. He was indicted under the Act for transporting the woman back from Atlantic City to Philadelphia. He contended, as do appellants here, that the whole trip was a mere "unitary circular journey", and that it was therefore not a transportation from one state to another within the meaning and intent of the Act. The court held that the return trip from Atlantic City to Philadelphia was clearly transportation that was prohibited by the terms of the statute and that the defendant therefore was guilty of a violation of the Act.

As opposed to these decisions, we have been able to find only one case, United States v. Wilson, D.C.E.D.Tenn., 266 F. 712, and it is on this case that appellants place their reliance. There, the transportation of a woman, for immoral purposes, from Nashville, Tennessee, through a part of Alabama, to Chattanooga, Ten-

ted to be produced in this court, it would show that appellants were not guilty of a violation of the White-Slave Traffic Act, as a matter of law, because of the circular vacation trip involved, we allowed counsel for appellants to leave with us a purported transcript of the evidence, but without any filing thereof, in order that we might assure ourselves that no fundamental injustice had been done by the previous denial of an extension, and that we would not, because of the absence of a bill of exceptions, be affirming a conviction which was not properly an offense under the Act. Having reached the conclusion, as indicated in the opinion, that, under the statute, there is no possible merit in appellants' contention that the return portion of "a circular vacation trip", by which the girls were intended to be returned to appellants' house of prostitution in Grand Island, Nebraska, is not a violation of the Act, it is obvious that no different result would have been reached

if a bill of exceptions had been before us, showing all the facts, and that no injustice could possibly therefore have been done appellants by the previous denial of their application for an extension. The clerk will accordingly be directed to return to appellants the tendered transcript of testimony, without any filing thereof.

[2] We have not previously had occasion to consider the question here involved in relation to the White-Slave Traffic Act, but we have analogously held, under a similar definition of interstate commerce in the National Motor Vehicle Theft Act, 18 U.S.C.A. § 408, in Hughes v. United States, 8 Cir., 4 F.2d 387, certiorari denied 268 U.S. 692, 45 S.Ct. 511, 69 L.Ed. 1160, that the taking of a stolen automobile on a circular trip from Cloud Chief, Oklahoma, to Safford, Arizona, and back again was a transportation in interstate commerce "from" one state "to" another.

nessee, was held not to be a violation of the Act, on the ground that the passage through Alabama was "a mere incident of the through transportation" from one point in Tennessee to another in the same state. Factual distinctions between that case and the case at bar could perhaps be drawn, but we prefer rather to express our disapprobation of the interpretation there made of interstate transportation under the White-Slave Traffic Act.[3] We agree with the criticism of the Wilson case voiced in United States v. Winkler, D.C.W.D.Tex., 299 F. 832, 834, that "it seems to stand alone, without authority to sustain it, and out of harmony with all other cases upon the same subject."

The construction here made of the Act automatically disposes of other of appellants' assignments of error without the necessity of further discussion. Some objections have been made to the indictment which also need not be discussed, since they are sufficiently answered by other decisions. See Pines v. United States, 8 Cir., 123 F.2d 825; Ackley v. United States, 8 Cir., 200 F. 217; Troutman v. United States, 10 Cir., 100 F.2d 628; Hughes v. United States, 6 Cir., 114 F.2d 285, 288; Connors v. United States, 158 U.S. 408, 15 S.Ct. 951, 39 L.Ed. 1033; also 18 U.S.C.A. § 556.

The judgment as to each appellant is affirmed.

WOODROUGH, Circuit Judge (dissenting).

I have been unable to concur in affirming the conviction of these appellants because I am not convinced that their act of taking the named young women in their automobile on the vacation trip through the mountains and back was criminal.

Recognizing, as the record requires, that the business at appellants' house in Grand Island, Nebraska, was carrying on prostitution, I think there is a fallacy in spelling a crime out of the act of taking the inmates away from their place of prostitution and stopping it for the two weeks period of vacation travel. In the Mann Act Congress has exercised its powers in the field of interstate commerce to prevent transportations in interstate commerce in furtherance of sexual immorality. I do not think its provisions contemplate, or can be extended to, transportations that are not in furtherance and have nothing to do with sexual immorality except to interrupt and stop its practice for a period. The law has been on the books a long time and none of the cases cited appears to me to lend support to the affirmance. United States v. Wilson, D.C., 266 F. 712, is to the contrary, so far as it is in point. But there the transportation may have been in furtherance of the immoral practices, and I do not rely on it. It seems obvious to me that aiding prostitutes to travel away from their foul environment for even a short vacation period is not evil conduct and that it was not the intent of the Act to make it criminal. Splitting the round trip up into two transportations, innocent while outward bound but criminal on the homeward lap, seems to me a mental operation that reflects ingenuity of the prosecutor rather than fair application of the Act to what the appellants did.

I can discern only one intent of all the parties to the trip, and that was to take a vacation. They went away with that intent and held to it till they got back. The penitentiary sentences imposed upon these appellants for doing that and nothing more seem to me erroneous.

---

[3] As we have indicated, under the definition of interstate commerce contained in the White-Slave Traffic Act and the National Motor Vehicle Theft Act (see footnote 2, supra) the crossing of any state line is transportation "from" one state "to" another.