MORTENSEN ET UX. *v.* UNITED STATES.

No. 559.   Argued March 9, 10, 1944.—Decided May 15, 1944.

*Mr. Eugene D. O'Sullivan,* with whom *Mr. Thomas W. Lanigan* was on the brief, for petitioners.

*Mr. Robert L. Stern,* with whom *Solicitor General Fahy* and *Assistant Attorney General Tom C. Clark* were on the brief, for the United States.

MR. JUSTICE MURPHY delivered the opinion of the Court.

We granted certiorari in this case to review the judgment of the Circuit Court of Appeals affirming the conviction of petitioners under § 2 of the White Slave Traffic Act, popularly known as the Mann Act.[1]  139 F. 2d 967.

Following their conviction by the jury in the District Court, petitioners filed a notice of appeal to the Circuit Court of Appeals. However, they failed to file a timely bill of exceptions in the District Court. Thereafter they applied to the Circuit Court of Appeals for an order granting them "the right to have a Bill of Exceptions" and for additional time in which to settle and file it. This application was denied without opinion or explanation. When the case subsequently came before another division of judges of that court for argument on the merits, petitioners renewed their request for permission to file a bill. This was, in effect, a motion for rehearing of the decision of the first division of judges of the court. Counsel was then allowed by the court to leave with it, but not to file, a copy of the reporter's transcript of the evidence "in order that we might assure ourselves that no fundamental injustice had been done by the previous denial of an extension, and that we would not, because of the absence of a bill of exceptions, be affirming a conviction which was not properly an offense under the Act." 139 F. 2d at 969, note 1. The court then treated the case as though the transcript were properly before it and sustained petitioners' conviction on the merits. Having reached the conclusion that there was no merit in petitioners' conten-

---

[1] Act of June 25, 1910, § 2, 36 Stat. 825, 18 U. S. C. § 398.

tions and that the result would have been the same had a bill of exceptions been filed, the court refused to permit the "purported" transcript to be filed. No other reason was given for this refusal.

Petitioners have raised before us the propriety of the action of the court below, claiming that they thereby have been prevented from urging and arguing certain assignments of error which they wished to urge. It is clear from Rule IV of the Criminal Appeals Rules [2] that the Circuit Court of Appeals has the right to exercise sound judicial discretion in supervising and controlling the proceedings on appeal. *Ray* v. *United States,* 301 U. S. 158, 166–167; *Forte* v. *United States,* 302 U. S. 220, 223; *Kay* v. *United States,* 303 U. S. 1, 9–10; *Miller* v. *United States,* 317 U. S. 192, 199. This includes the right to grant or deny belated applications for permission to file bills of exceptions. And the court's action in the matter is not reviewable in this Court absent a clear abuse of discretion.

But under the peculiar circumstances of this case it is unnecessary to determine whether the court below abused its discretion in refusing to allow a bill to be filed. When that court examined the transcript of the evidence and conclusively adjudicated the merits, it accomplished in substance all that would have been achieved if the formality of filing the transcript had occurred and the court had then passed upon the merits. In order that petitioners shall not be unfairly deprived of the right to seek a review of that court's determination of the merits, we may consider the court's action as in effect having approved the filing of the transcript as a bill of exceptions. A copy of the transcript has been lodged with the Clerk of this Court and no question has been raised as to its correctness or completeness. In accordance with the Government's suggestion and in the exercise of our supervisory

---

[2] 292 U. S. 661, 663; 18 U. S. C. A. following § 688.

appellate power, we shall treat the transcript as a part of the record before us and consider the case on its merits.

The petitioners, man and wife, operated a house of prostitution in Grand Island, Nebraska. In 1940 they planned an automobile trip to Salt Lake City, Utah, in order to visit Mrs. Mortensen's parents. Two girls who were employed by petitioners as prostitutes asked to be taken along for a vacation and the Mortensens agreed to their request. They motored to Yellowstone National Park and then on to Salt Lake City, where they all stayed at a tourist camp for four or five days. They visited Mrs. Mortensen's parents and, in addition, the girls "went to shows and around in the parks" and saw various other parts of the city. The four then returned in petitioners' automobile to Grand Island; on arrival they drove immediately to petitioners' house of ill fame and retired to their respective rooms. The following day one of the girls resumed her activities as a prostitute in petitioners' employ, while the other did not resume such activities for a week or ten days because of illness. Both girls continued to act as prostitutes for petitioners for a year or more after their return from Salt Lake City.

It is undisputed that this was purely a vacation trip, with the two girls paying their own living expenses and petitioners bearing the expenses of transportation. One of the girls had offered to help pay for the transportation, but petitioners refused on the ground that the cost would remain the same even if the girls did not accompany them. No acts of prostitution or other immorality occurred during the two-week trip and there was no discussion of such acts during the course of the journey. Both girls testified that during the trip they gave no consideration to their work as prostitutes and made no plans to abandon such activities. There was also uncontradicted evidence that the two girls were under no obligation or compulsion of any kind to return to Grand Island to work for petition-

ers. They were free at any time before, during or after the vacation excursion to leave petitioners' employ and engage in their own pursuits. Both girls claimed that Grand Island was their residence, one of them testifying that she boarded her child with a family in that city.

Petitioners were charged in two counts with violating § 2 of the Mann Act in that they transported and caused to be transported, and aided and assisted in obtaining transportation for and in transporting, two girls in interstate commerce from Salt Lake City to Grand Island for the purpose of prostitution and debauchery, and with intent to induce, entice and compel the girls to give themselves up to debauchery and to engage in immoral practices. The jury was charged that purpose was an essential ingredient of the crime and that if the jury found that the transportation from Salt Lake City to Grand Island was planned with no immoral purpose, no crime was committed. The jury was also told that, to convict, it must find that the Government had proved beyond a reasonable doubt that petitioners transported the girls from Salt Lake City to Grand Island for the purpose of prostitution and debauchery. The jury returned a verdict of guilty on both counts. This conviction was affirmed by the Circuit Court of Appeals under circumstances previously described.

The primary issue before us is whether there was any evidence from which the jury could rightly find that petitioners transported the girls from Salt Lake City to Grand Island for an immoral purpose in violation of the Mann Act.

The penalties of § 2 of the Act are directed at those who knowingly transport in interstate commerce "any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose to induce, entice, or compel such woman or girl to become a prostitute or to give herself up to debauchery,

or to engage in any other immoral practice." The statute thus aims to penalize only those who use interstate commerce with a view toward accomplishing the unlawful purposes. To constitute a violation of the Act, it is essential that the interstate transportation have for its object or be the means of effecting or facilitating the proscribed activities. *Hansen* v. *Haff*, 291 U. S. 559, 563. An intention that the women or girls shall engage in the conduct outlawed by § 2 must be found to exist before the conclusion of the interstate journey and must be the dominant motive of such interstate movement. And the transportation must be designed to bring about such result. Without that necessary intention and motivation, immoral conduct during or following the journey is insufficient to subject the transporter to the penalties of the Act.

Since the issue as to whether petitioners intended that the two girls should resume their immoral conduct on their return to Grand Island and transported them in interstate commerce for that purpose was submitted to the jury with appropriate instructions we would normally be precluded from reviewing or disturbing the inferences of fact drawn from the evidence by the jury. But we have never hesitated to examine a record to determine whether there was any competent and substantial evidence fairly tending to support the verdict. Cf. *Abrams* v. *United States*, 250 U. S. 616, 619. Our examination of the record in this case convinces us that there was a complete lack of relevant evidence from which the jury could properly find or infer, beyond a reasonable doubt, that petitioners transported the girls in interstate commerce "for the purpose of prostitution or debauchery" within the meaning of the Mann Act.

It may be assumed that petitioners anticipated that the two girls would resume their activities as prostitutes upon their return to Grand Island. But we do not think it is

fair or permissible under the evidence adduced to infer that this interstate vacation trip, or any part of it, was undertaken by petitioners for the purpose of, or as a means of effecting or facilitating, such activities. The sole purpose of the journey from beginning to end was to provide innocent recreation and a holiday for petitioners and the two girls. It was a complete break or interlude in the operation of petitioners' house of ill fame and was entirely disassociated therefrom. There was no evidence that any immoral acts occurred on the journey or that petitioners forced the girls against their will to return to Grand Island for immoral purposes. What Congress has outlawed by the Mann Act, however, is the use of interstate commerce as a calculated means for effectuating sexual immorality. In ordinary speech an interstate trip undertaken for an innocent vacation purpose constitutes the use of interstate commerce for that innocent purpose. Such a trip does not lose that meaning when viewed in light of a criminal statute outlawing interstate trips for immoral purposes.

The fact that the two girls actually resumed their immoral practices after their return to Grand Island does not, standing alone, operate to inject a retroactive illegal purpose into the return trip to Grand Island. Nor does it justify an arbitrary splitting of the round trip into two parts so as to permit an inference that the purpose of the drive to Salt Lake City was innocent while the purpose of the homeward journey to Grand Island was criminal. The return journey under the circumstances of this case cannot be considered apart from its integral relation with the innocent round trip as a whole. There is no evidence of any change in the purpose of the trip during its course. If innocent when it began it remained so until it ended. Guilt or innocence does not turn merely on the direction of travel during part of a trip not undertaken for immoral ends. If the return journey was illegal, so was the out-

going one since all intended, from the beginning, to end the journey where it began, at Grand Island. The outward leg of the trip was interstate transportation. Yet it was not charged, and could not well be, that proof of this part of the trip was a violation of the Act. It differed in no respect from the other part, except in the direction of travel. That is not enough to make the first part innocent, the last part illegal. Criminal intent and purpose must be grounded on something less ingenious than that which is necessary to sustain a finding of such a purpose in making the return interstate journey to Grand Island. "People not of good moral character, like others, travel from place to place and change their residence. But to say that because they indulge in illegal or immoral acts, they travel for that purpose, is to emphasize that which is incidental and ignore what is of primary significance." *Hansen* v. *Haff, supra,* 562–563. Cf. *Ex parte Rocha,* 30 F. 2d 823.

An artificial and unrealistic view of the nature and purpose of the return journey to Grand Island is necessary to sustain this conviction. But we are unwilling to sanction the application of the Mann Act in a manner that is so manifestly unfair. Whatever their faults, petitioners are entitled to have just and fair treatment under the law and not to be punished for transporting girls in interstate commerce for a purpose wholly different from any of the purposes condemned by Congress.

We do not here question or reconsider any previous construction placed on the Act which may have led the federal government into areas of regulation not originally contemplated by Congress. But experience with the administration of the law admonishes us against adding another chapter of statutory construction and application which would have a similar effect and which would make possible even further justification of the fear expressed at the time of the adoption of the legislation that its broad provisions "are liable to furnish boundless opportunity to

hold up and blackmail and make unnecessary trouble, without any corresponding benefits to society." [3]

To punish those who transport inmates of a house of prostitution on an innocent vacation trip in no way related to the practice of their commercial vice is consistent neither with the purpose nor with the language of the Act. Congress was attempting primarily to eliminate the "white slave" business which uses interstate and foreign commerce as a means of procuring and distributing its victims and "to prevent panderers and procurers from compelling thousands of women and girls against their will and desire to enter and continue in a life of prostitution." [4] Such clearly was not the situation revealed by the facts of this case. To accomplish its purpose the statute enumerates the prohibited acts in broad language capable of application beyond that intended by the legislative framers. But even such broad language is conditioned upon the use of interstate transportation for the purpose of, or as a means of effecting or facilitating, the commission of the illegal acts. Here the interstate round trip had no such purpose and was in no way related to the subsequent immoralities in Grand Island. In short, we perceive no statutory purpose or language which prohibits petitioners under these circumstances from using interstate transportation for a vacation or for any other innocent purpose.

The judgment of the court below is

*Reversed.*

MR. CHIEF JUSTICE STONE:

MR. JUSTICE BLACK, MR. JUSTICE REED, MR. JUSTICE DOUGLAS and I think the judgment should be affirmed.

Courts have no more concern with the policy and wisdom of the Mann Act than of the Labor Relations Act or

---

[3] 45 Cong. Rec. 1033.

[4] H. Rep. No. 47, p. 10 (61st Cong., 2d Sess.). The same statement appears in S. Rep. No. 886, p. 10 (61st Cong., 2d Sess.). See also 45 Cong. Rec. 805, 821, 1035, 1037.

any other which Congress may constitutionally adopt. Those are matters for Congress to determine, not the courts. Congress, in enacting the Mann Act, declared in unmistakable terms that any person who should transport across state lines "any woman . . . for the purpose of prostitution . . . or with the intent and purpose to induce . . . such woman . . . to give herself up to debauchery, or to engage in any other immoral practice; . . . shall be deemed guilty of a felony."

The fact that petitioners, who were engaged in an established business of operating a house of prostitution in Nebraska, took some of its women inmates on a transient and innocent vacation trip to other states, is in no way incompatible with the conclusion that petitioners, in bringing them back to Nebraska, purposed and intended that they should resume there the practice of commercial vice, which in fact they did promptly resume in petitioners' establishment. The record is without evidence that they engaged or intended to engage in any other activities in Nebraska, or that anything other than the practice of their profession was the object of their return. For this reason the case is controlled by *Lapina* v. *Williams,* 232 U. S. 78, rather than by *Hansen* v. *Haff,* 291 U. S. 559. The jury was properly instructed, its verdict is supported by ample evidence, and the two courts below rightly sustained it.