## BEACH v. UNITED STATES.

No. 8561.

United States Court of Appeals
District of Columbia.

Argued March 9, 1944.

Decided July 24, 1944.

Writ of Certiorari Granted Dec. 11, 1944.

See 65 S.Ct. 276.

---

Mr. James R. Kirkland, of Washington, D. C., with whom Mr. Nathan M. Lubar, of Washington, D. C., was on the brief, for appellant.

Mr. Bernard Margolius, Assistant United States Attorney, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, and Charles B. Murray, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and EDGERTON, and ARNOLD, Associate Justices.

## GRONER, C. J.

Appellant was indicted and convicted in the District Court of the United States for the District of Columbia of violation of the Mann White Slave Act. The evidence disclosed that she was the operator of a house of prostitution in the City of Washington and on the day in question accompanied one of the inmates of the house to the Hamilton Hotel, some four blocks away, for purposes of prostitution. The trip from the house to the hotel was made in a taxicab, appellant paying her own and her companion's fare.

The question we must decide is whether the Mann Act [1] is applicable in a prostitution case involving transportation solely within the District of Columbia.

We are obliged, at the outset, to admit that the literal language of the Act justifies the judgment below and its affirmance by this court. But as Mr. Justice Frankfurter recently remarked, "The notion that because the words of a statute are plain, its meaning is also plain, is merely pernicious oversimplification." [2] And this, he said, is true, because "A statute, like other living organisms, derives significance and sustenance from its environment, from which it cannot be severed without being mutilated. Especially is this true where the statute, like the one before us, is part of a legislative process having a history and a purpose. The meaning of such a statute cannot be gained by confining inquiry within its four corners. Only the historic process of which such legislation is an incomplete fragment—that to which it gave rise as well as that which gave rise to it—can yield its true meaning."

Long before the Mann Act, which, as everyone knows, was passed in an effort to put an end to commercialized interstate vice, Congress had legislated for the District of Columbia with relation to the subjects covered in that Act. And at the time of passage of the Act a local law of the District fitted like a glove the offence charged in the indictment we are now considering. By its terms it was made unlawful for "any prostitute" (which expression is descriptive of appellant in this case) to invite or persuade any person to go with her to any house or building for the purpose of prostitution. [3] At the time of the passage of the Mann Act, perhaps the same day, since both Acts were approved June 25, 1910, Congress passed a local pandering statute, [4] making it a misdemeanor to entice or force any woman to go to a house of assignation, which is this case, except that here the "victim", herself a professional prostitute, went to the assignation willingly and expectantly. In the debate on a bill punishing pandering in the District of Columbia, Congressman Mann objected, stating: "The bill which has already passed the House (referring to the Mann Act), and which I introduced, covers this entire subject in the District of Columbia." [5] Congressman Borland, who had introduced the District bill, replied: "I will say to the gentleman that it does not. The bill that passed the House was designed to regulate the national part of it, so far as it affected interstate commerce, and could regulate nothing else. This is a local bill, as much as a bill of a state legislature regulating police power." [6] In the debate on the Mann Act, Congressman Sims, one of its leading exponents and a member of the District Committee, stated, on the floor that the suggestion had occurred to him that the Mann Act should include "at least the maintaining of a house for such purposes in the District of Columbia." He went on to say: "We discussed that informally. Some members

---

[1] 18 U.S.C.A. § 398.

[2] United States v. Monia, 317 U.S. 424, 431, 63 S.Ct. 409, 412, 87 L.Ed. 376 (dissent).

[3] Sec. 177, Title 6, D.C.Code, 1929.

[4] Sec. 179, Title 6, D.C.Code, 1929, Ch. 404, 36 Stat. 833.

[5] 45 Cong. Rec. 3138.

[6] 45 Cong. Rec. 3138.

of the Committee thought it might be regarded as an unfavorable amendment to the bill itself. I called up Major Sylvester (Superintendent of Police) and talked with him about the matter, and asked him if he thought such legislation as I proposed would be of benefit to the District. He said it would not be of any benefit whatever. He said he thought at present that the matter was in the best condition for police control, and inasmuch as the gentleman whose duty it is to enforce laws governing such matters in the District so expressed himself, I thought it was my duty not to set up my individual judgment as against his. Therefore, I did not offer the amendment, and I would not vote for it now, believing as I do, that it would not help the measure, and neither would it help the conditions in the District of Columbia." [7]

But of far more significance than these expressions of individual opinion by members of Congress is the definite congressional purpose, evidenced by legislative bills introduced and passed from time to time after the enactment of the Mann Act, to cover the local situation and to reach every aspect of the offence defined in that Act,—and which in addition cover completely the whole subject of prostitution, however committed, in the District of Columbia. One section of the present law prohibits the offence itself; [8] another, the offence of operating a house of prostitution; [9] another, the act of procuring a person to live in prostitution; [10] or procuring a person for acts of prostitution; [11] or procuring a person for the immoral enjoyment of a third person; [12] another, for inviting or inducing a person to go with him or her for purposes of prostitution anywhere in the District, or to a residence, or any other house or building (including a hotel), or to accompany or follow him or her to any place whatever within the District, including parks or elsewhere, for purposes of prostitution; [13] and finally the Pandering Act itself,[14] which makes it a felony for any person in the District of Columbia to induce any female to reside in a house of prostitution, to engage in prostitution, or to reside wth any other person for the purpose of prostitution. So complete is the

coverage that about the only place in which the act can be done without running athwart the local law is in an anchored balloon.

■ It is, we think, too clear for argument that Congress in the enactment of these local laws designed and intended them to cover the entire local field, and neither at the time of the passage of the Mann Act, nor since, considered it—except in its interstate aspect—to apply to the District of Columbia. Any other conclusion would, it seems to us, convict Congress of doing the wholly useless and unnecessary thing of repeatedly giving thought and attention to the passage of local laws parallelling in every essential aspect the provisions of the Mann Act, and in many respects going well beyond its provisions. In this view it is proper to bear in mind the well-considered Supreme Court dictum in the recent case of Mortensen v. United States,[15] in which Mr. Justice Murphy, speaking for the Court, said: "We do not here question or reconsider any previous construction placed on the Act which may have led the federal government into areas of regulation not originally contemplated by Congress. But experience with the administration of the law admonishes us against adding another chapter of statutory construction and application which would have a similar effect and which would make possible even further justification of the fear expressed at the time of the adoption of the legislation that its broad provisions 'are liable to furnish boundless opportunity to hold up and blackmail and make unnecessary trouble, without any corresponding benefits to society.' "

It is difficult to think that this language was inadvertent, when it so plainly admonishes us not to impose on the Mann Act a new phase of construction which, with no corresponding benefits to society, will open wider than it is the door to blackmailing.

Considered then in that light, we think it not only proper but mandatory to apply here the rule announced by the Supreme Court in Holy Trinity Church v. United States, 143 U.S. 457, 472, 12 S.Ct. 511, 516, 36 L.Ed. 226, in which the literal construction of a statute, just as plain as the one

[7] 45 Cong. Rec. 1040.
[8] § 22—2702, D.C.Code 1940.
[9] § 22—2712, D.C.Code 1940.
[10] § 22—2707, D.C.Code 1940.
[11] §§ 22—2709, 22—2710, D.C.Code 1940.
[12] § 22—2711, D.C.Code 1940.
[13] § 22—2701 D.C.Code 1940.
[14] § 22—2705 D.C.Code 1940.
[15] 322 U.S. 369, 64 S.Ct. 1037, 1041.

we are considering, was rejected because— "It is the duty of the courts, under these circumstances, to say that, however broad the language of the statute may be, the act, although within the letter, is not within the intention of the legislature, and therefore cannot be within the statute."

In that case, as in this, the statute was the result of a definite evil, to control which the legislature, the Supreme Court said, "used general terms with the purpose of reaching all phases of that evil; and thereafter, unexpectedly, it is developed that the general language· thus employed is broad enough to reach cases and acts which the whole history and life of the country affirm could not have been intentionally legislated against."

█ We think we should also give weight to the canon of statutory construction not long ago referred to by Mr. Justice Stone in the case of United States v. Katz, 271 U.S. 354, 357, 46 S.Ct. 513, 514, 70 L.Ed. 986, as follows: "All laws are to be given a sensible construction; and a literal application of a statute, which would lead to absurd consequences, should be avoided whenever a reasonable application can be given to it, consistent with the legislative purpose."

In the spirit of that principle, when we come to examine the consequences of the application of the Mann Act to pandering in the District, we at once confront an unhappy situation of divided authority between local and national prosecuting agencies. Such an undesirable situation would assuredly not make for responsible government; but apart from that, the line of division between the jurisdiction of local and national authorities would be based on the accidental circumstance of who induced the woman to ride in a taxi, or a street car, or a public elevator. The guilt or innocence of the accused would under the Mann Act depend upon the ludicrous circumstance whether the woman was "transported" by any means or in any manner without cost to herself. In every such case the offence which, had she walked, would have constituted a misdemeanor, would become at once a felony and an invitation to extortion and all similar kindred evils.

It does not appear from the record in this case why a prosecution of doubtful validity was brought under the Mann Act, when a conviction certainly could have been obtained on the same or less evidence under the local statutes.

Furthermore, once we apply locally the provisions of the Mann Act, we should also be required to accept the results implicit in the doctrine of the Caminetti case;[16] and this, notwithstanding the Department of Justice has sought to avoid some of these by instructing district attorneys to exercise discretion in the prosecution of what are called "non-commercial" cases; and also, to avoid, as far as possible, prosecution of cases involving elements of blackmail. And this may be all very well as a national policy; but when we consider that not since the passage of the Mann Act has the prosecution·of an offence of this nature been begun in the District of Columbia under that Act, and when we recognize, as we do, that this is true because of the preemption by Congress of the local field in the passage of local laws fully covering the whole subject, we think we should be slow to write-in this new chapter of literal interpretation contrary to what is shown to be the real Congressional purpose.

Reversed.

EDGERTON, Associate Justice (dissenting).

The question as I see it is whether we may amend an Act of Congress by striking out a clause which we think unfortunate. The Mann Act provides: "Any person who shall knowingly transport or cause to be transported * * * in interstate or foreign commerce, or in any Territory or in the District of Columbia, any woman or girl for the purpose of prostitution[1] or debauchery * * * shall be deemed guilty of a felony * * *."[2] Appellant was

---

[16] Caminetti v. United States, 1917, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R. A.1917F, 502, Ann.Cas.1917B, 1168.

[1] The Committee reports indicate that Congress intended the Mann Act to cover only ·transportation for *compulsory* prostitution. But the Supreme Court interpreted the Act more broadly in the Caminetti case, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.

Cas.1917B, 1168, and has not yet overruled that decision, although it has intimated that it may do so. Mortensen v. United States, 322 U.S. 369, 64 S.Ct. 1037. Since the intimation was tentative, this court is probably right in saying that we must apply to commercial prostitution the doctrine of the Caminetti case.

[2] 36 Stat. 825, § 2, 18 U.S.C.A. § 398.

convicted, on sufficient evidence, of transporting a woman in the District of Columbia for the purpose of prostitution. I think the conviction should be affirmed.

Congress plainly expressed its intention that various provisions of the Mann Act should apply to purely local conduct in the territories and in the District of Columbia. Section 2 of the Act, which contains the clause just quoted, also makes it a felony to "procure or obtain * * * any ticket * * * to be used by any woman or girl in interstate or foreign commerce, or in any Territory or the District of Columbia, in going to any place for the purpose of prostitution or debauchery * * * whereby any such woman or girl shall be transported in interstate or foreign commerce, or in any Territory or the District of Columbia * * *." Section 3 of the Act[3] makes it a felony to "persuade, induce, entice, or coerce * * * any woman or girl to go from one place to another in interstate or foreign commerce, or in any Territory or the District of Columbia, for the purpose of prostitution or debauchery * * * and * * * thereby knowingly cause * * * such woman or girl to go and to be carried or transported as a passenger upon the line or route of any common carrier or carriers in interstate or foreign commerce, or any Territory or the District of Columbia * * *." Section 5[4] authorizes prosecution, for violation of the foregoing provisions, "in any court having jurisdiction of crimes within the district in which said violation was committed, or from, through, or into which any such woman or girl may have been carried or transported as a passenger in interstate or foreign commerce, or in any Territory or the District of Columbia * * *." Thus Congress expressed not once but six times its intention to deal with local conduct in the District of Columbia; three times in Section 2, twice in Section 3, and once in Section 5.

Since the words that Congress used in the Mann Act can mean only one thing it is unnecessary to consider their legislative history. But their legislative history confirms their deliberate use and their plain meaning. The two Committee reports, one in the Senate and one in the House of Representatives, both contain the following paragraph, conspicuously headed "District of Columbia and the Territories": "All of the provisions which make the crime depend upon transportation in interstate or foreign commerce are made applicable to the District of Columbia, the Territories and possessions of the United States, including the Panama Canal Zone, without regard to the crossing of district, territorial, or state lines, and apply within the territories to the same extent as they apply in cases outside of the territories in interstate or foreign commerce."[5] During the debate in the House of Representatives the following colloquy occurred. Mr. Russell, speaking for the proponents of the bill, said of the transportation clause which appellant has violated and the ticket clause in the same section: "Both of these clauses apply in terms to any Territory of the United States and to the District of Columbia." Mr. Bartlett: "Then no matter what may be the construction of the courts as to the constitutionality of the bill with reference to the transportation, or the purchase of the ticket for transportation, from one State to another, the bill would be constitutional as to the District of Columbia and the Territories?" Mr. Russell: "I think so, undoubtedly * * *."[6] Mr. Keifer afterwards asked: "Do I understand the gentleman to say that the police power of the United States was held to extend to these matters?" Mr. Russell: "Only within the District of Columbia and the Territories."[7] The opinion of the court shows that (1) Mr. Sims explained to the House why the proponents of the Act decided not to make it cover the *keeping of a house* of prostitution in the District; and that (2) when a different bill was before the House at a later time, Mr. Mann made an erroneously broad and Mr. Borland an erroneously narrow statement, from recollection, regarding the effect of the Mann Act within the District. I do not understand the relevance of these two facts, except that the first is added evidence that Congress deliberately considered the question what conduct in the District it desired to cover by the Act.

The prohibition of transportation for the purpose of prostitution, in the District, contradicts no other provision of the Mann Act and no provision of any other act. No

---

[3] 18 U.S.C.A. § 399.
[4] 18 U.S.C.A. § 401.
[5] H. R. Rep. No. 47, 61st Cong., 2d Sess. (1909) 2; Sen. Rep. No. 886, 61st Cong., 2d Sess. (1910) 2.
[6] 45 Cong. Rec. 812.
[7] 45 Cong.Rec. 816.

statute authorizes or condones the conduct in the District which the Mann Act condemns. To argue, as the court does, that appellant's conduct cannot be covered by the Mann Act because it is covered by the pandering act and other District of Columbia statutes, is like arguing that conduct cannot be covered by a statute against fornication or adultery if it is covered by a statute against prostitution. The Mann Act and other legislation for the District of Columbia overlap, as adultery and prostitution overlap. Some conduct violates both the Mann Act and the pandering act, for example, while some conduct violates one and not the other. Criminal statutes frequently overlap. Their overlapping does not justify a court in declining to enforce them.[8]

To say as the court does that Congress did not consider the Mann Act, except in its interstate aspect, to apply to the District, is equivalent to saying that by the words "in the District of Columbia" Congress did not mean "in the District of Columbia" but meant instead "to or from the District of Columbia." This construction ignores not only the plain meaning and the legislative history but also the context of the words which Congress used. It deprives those words not only of their natural and intended effect, but of all effect. For the Act begins by providing expressly, in Section 1, "That the term 'interstate commerce,' as used in this Act, shall include transportation from any State or Territory or the District of Columbia to any other State or Territory or the District of Columbia * * *. "[9] If, therefore, the court's construction of the words of § 2, "transport * * * in the District of Columbia", is adopted, those words add nothing whatever to the Act. The court is not ruling that they should be given a special or limited application. The court is ruling that they should be given no application at all. A construction which deprives plain language of all meaning is not a construction but a deletion.[10]

Of the intention of Congress, in every sense and by every test, to deal with transportation which does not cross the District line, there is in my opinion not the slightest doubt. It is true that words do not always mean what they superficially appear to say. Sometimes they are used in special and unfamiliar senses, and sometimes in entirely new senses. But with deference to my colleagues, I think this has nothing to do with the case since (1) the context, (2) the Committee reports, and (3) the debates in Congress all show that the words "in the District of Columbia" mean exactly what they say and there is no evidence that they mean anything else. The court makes a case for the proposition that the inclusion of the District of Columbia in the Mann Act is unfortunate, but that is not the question. I submit this dissent not in defense of the Mann Act but in defense of the authority of Congress. Courts have often construed statutes in novel and questionable ways, but they have not often read an entire phrase completely out of a statute. They did not do so in any of the cases which this court cites. No euphemism can obscure the fact that this court does so when it imposes upon clear and simple words a construction which allows them no effect. It thereby substitutes for a constitutional and relatively democratic legislative process one that is neither democratic nor constitutional.

---

[8] When a single subject is covered by general legislation which does not mention the District, and also by legislation which relates expressly to the District, a question may arise as to whether Congress had the District in mind in enacting the general legislation. Johnson v. United States, 225 U.S. 405, 411, 32 S. Ct. 748, 56 L.Ed. 1142; Kleindienst v. United States, 48 App.D.C. 190, 201; O'Brien v. United States, 69 App.D.C. 135, 99 F.2d 368. But since the Mann Act and the pandering act both relate expressly to the District, no such question arises here.

[9] 36 Stat. 825, 18 U.S.C.A. § 397.

[10] "As we cannot assume that its addition to the statute was purposeless, we must take its meaning to be that which the words suggest, which alone would add something to the statute * * *." Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, 547, 57 S. Ct. 592, 599, 81 L.Ed. 789.