## UNITED STATES v. ORIOLO.

### No. 8514.

Circuit Court of Appeals, Third Circuit.

Argued Feb. 27, 1944.

Decided Nov. 6, 1944.

Writ of Certiorari Granted Feb. 26, 1945.

See 65 S.Ct. 683.

Louis F. McCabe, of Philadelphia, Pa., for appellant.

Thomas J. Curtin, of Philadelphia, Pa. (Gerald A. Gleeson, U. S. Atty., of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS and JONES, Circuit Judges, and BARD, District Judge.

BARD, District Judge.

This is an appeal from a conviction under the White Slave Traffic Act, popularly called the Mann Act.[1]

Early in July of 1942 defendant met a young woman in Philadelphia and employed her to work for him as a prostitute in a hotel there. After several weeks the couple went by automobile to Atlantic City, New Jersey, for a day's outing. There they were arrested and their automobile was held by the authorities. They returned to Philadelphia the following day by railroad, defendant purchasing the tickets. On the return trip, and while the train was still in New Jersey, defendant informed the woman that she would have to resume the business of prostitution in Philadelphia to enable him to pay the $500 fine that had been imposed in Atlantic City. Upon their arrival in Philadelphia the woman worked for defendant as a prostitute and turned over her earnings to him.

The indictment was based only on the return trip from New Jersey to Pennsylvania. Defendant demurred to the evidence and the trial court overruled the demurrer and adjudged the defendant guilty. The single question presented is whether this evidence was sufficient to sustain conviction.

Since the argument of this case before us the Supreme Court of the United States has decided the case of Mortensen v. United States, 322 U.S. 369, 64 S.Ct. 1037, 1039, upon facts almost strikingly similar to those here presented, so that our problem is narrowed to a consideration of whether there are any material differences between the two cases. In the Mortensen case, in which the defendants were indicted for violation of Section 2 of the Mann Act, the essential facts were succinctly stated by Mr. Justice Murphy as follows:

"The petitioners, man and wife, operated a house of prostitution in Grand Island, Nebraska. In 1940 they planned an automobile trip to Salt Lake City, Utah, in order to visit Mrs. Mortensen's parents. Two girls who were employed by petitioners as prostitutes asked to be taken along for a vacation and the Mortensens agreed to their request. They motored to Yellowstone National Park and then on to Salt Lake City, where they all stayed at a tourist camp for four or five days. They visited Mrs. Mortensen's parents and, in addition, the girls 'went to shows and around in the parks' and saw various other parts of the city. The four then returned in petitioners' automobile to Grand Island; on arrrival they drove immediately to petitioners' house of ill fame and retired to their respective rooms. The following day one of the girls resumed her activities as a prostitute in petitioners' employ, while the other did not resume such activities for a week or ten days because of illness. Both girls continued to act as prostitutes for petitioners for a year or more after their return from Salt Lake City.

"It is undisputed that this was purely a vacation trip, with the two girls paying their own living expenses and petitioners bearing the expenses of transportation. One of the girls had offered to help pay for the transportation, but petitioners refused on the ground that the cost would remain the same even if the girls did not accompany them. No acts of prostitution or other immorality occurred during the two-week trip and there was no discussion of such acts during the course of the journey. Both girls testified that during the trip they gave no consideration to their work as prostitutes and made no plans to abandon such activities. There was also uncontradicted evidence that the two girls were under no obligation or compulsion of any kind to return to Grand Island to work for petitioners. They were free at any time before, during or after the vacation excursion to leave petitioners' employ and engage in their own pursuits."

On these facts petitioners were convicted of violating the Mann Act with respect to their return trip to Nebraska and the conviction had been sustained by the Circuit Court of Appeals. The Supreme Court reversed the conviction on the ground that there was "a complete lack of relevant evidence from which the jury could properly find or infer, beyond a reasonable doubt, that petitioners transported the girls in interstate commerce 'for the purpose of prostitution or debauchery' within the meaning of the Mann Act." Mr. Justice Murphy, speaking for the majority of the Court,[2] said at page 374 of 322 U.S., at page 1040 of 64 S.Ct.:

[1] Act of June 25, 1910, c. 395, §§ 2, 3, 36 Stat. 825, 18 U.S.C.A. §§ 398, 399.

[2] Mr. Chief Justice Stone wrote a dissenting opinion in which Mr. Justice Black, Mr. Justice Reed and Mr. Justice Douglas joined.

154

"It may be assumed that petitioners anticipated that the two girls would resume their activities as prostitutes upon their return to Grand Island. But we do not think it is fair or permissible under the evidence adduced to infer that this interstate vacation trip, or any part of it, was undertaken by petitioners for the purpose of, or as a means of effecting or facilitating, such activities. The sole purpose of the journey from beginning to end was to provide innocent recreation and a holiday for petitioners and the two girls. It was a complete break or interlude in the operation of petitioners' house of ill fame and was entirely disassociated therefrom. There was no evidence that any immoral acts occurred on the journey or that petitioners forced the girls against their will to return to Grand Island for immoral purposes. * * * ·

"The return journey under the circumstances of this case cannot be considered apart from its integral relation with the innocent round trip as a whole. There is no evidence of any change in the purpose of the trip during its course. If innocent when it began it remained so until it ended. Guilt or innocence does not turn merely on the direction of travel during part of a trip not undertaken for immoral ends. If the return journey was illegal, so was the outgoing one since all intended, from the beginning, to end the journey where it began, at Grand Island. The outward leg of the trip was interstate transportation. Yet it was not charged, and could not well be, that proof of this part of the trip was a violation of the Act. It differed in no respect from the other part, except in the direction of travel. That is not enough to make the first part innocent, the last illegal. Criminal intent and purpose must be grounded on something less ingenious than that which is necessary to sustain a finding of such a purpose in making the return interstate journey to Grand Island."

There is one significant fact which, in our opinion, distinguishes the present case from the Mortensen case and presents sufficient evidence to sustain the conviction. That evidence consists of the fact that defendant was arrested and fined in New Jersey and his statement to the woman that she would have to return to Philadelphia and resume the business of prostitution to enable him to pay the fine. As will be noted from the excerpt from the majority opinion of the Supreme Court above quoted, much stress was laid on the fact that: "The sole purpose of the journey from beginning to end was to provide innocent recreation and a holiday for petitioners and the two girls. * * * There is no evidence of any change in the purpose of the trip during its course. If innocent when it began it remained so until it ended."

In the case at bar there was evidence of a change in the purpose of the trip during its course. The seizure of defendant's automobile and the fine imposed upon him supply the motive for the formation of a new intent on his part in transporting the woman to Pennsylvania and his statement to her as to this intent was sufficient to demonstrate that a change had occurred in the purpose of the trip to Philadelphia which distinguished it from being merely the return of the vacation trip.

Accordingly, we conclude that there is evidence in this case, lacking in the Mortensen case, that defendant did transport a woman in interstate commerce "for the purpose of prostitution or debauchery" within the meaning of the Mann Act.

The judgment of the district court is affirmed.

BIGGS, Circuit Judge.

I dissent. The majority hold that the words [1] spoken by the defendant to the woman on the train are evidence "of a change in the purpose of the trip during its course."; that by using them he evidenced a new intent sufficient to sustain the charge of the indictment that he transported the woman from Atlantic City to Philadelphia for immoral purposes. When the defendant took the woman on a day's

---

[1] The woman testified " * * * we were in Atlantic City on the train about fifteen minutes and he [the defendant] said he needed * * * money to come back and get his car * * *. He told me I should go back to work as a prostitute in the * * * Hotel, and I should earn the money for him so he could go back and pay his fine to get his car."

It should be pointed out that the woman also testified that the defendant recovered his car with money borrowed from a friend and insofar as the record shows none of the woman's earnings contributed to the recovery of the car.

outing to Atlantic City he intended to transport her at the end of the day from Alantic City to Philadelphia so that she might resume work as a prostitute for his pecuniary profit. The change in purpose, and hence in intent, on which the majority rely, rests on the insubstantial difference between transporting the woman to Philadelphia to earn money to aid the defendant to recover his car as distinguished from transporting her (as he had intended originally) to earn money for him. If there be evidence of a change in purpose the change is too trivial to support the defendant's conviction in the light of Mortensen v. United States, 322 U.S. 369, 64 S.Ct. 1037.

The judgment should be reversed.