**Ralph BECKER, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15132.**

United States Court of Appeals
Eighth Circuit.

Dec. 17, 1954.

Leonard F. Schmitt, Merrill, Wis., for appellant.

Alex Dim, Asst. U. S. Atty., St. Paul, Minn. (George E. MacKinnon, U. S. Atty., St. Paul, Minn., on the brief), for appellee,

Before SANBORN, WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

WOODROUGH, Circuit Judge.

The appellant Ralph Becker was convicted and sentenced under Count two of a three count indictment charging him with violation of the Mann Act, 18 U.S.C.A., section 2422, in inducing the transportation of one Lila Lane as a passenger upon the line of a common carrier in interstate commerce from Minneapolis, Minnesota, to Eau Claire, Wisconsin, and thence by automobile to Medford, Wisconsin, for the purpose and with the intent denounced in the Act.

As stated in the brief for Becker, "The principal contention of the appellant on this appeal is that the trip made by the female in question, to-wit: the trip of Lila Lane from Minneapolis, Minnesota to Medford, Wisconsin on or about November 27, 1953, was her return on a 'round trip' from Medford, Wisconsin to Minneapolis, Minnesota and return; that the outgoing part of the trip from Medford, Wisconsin to Minneapolis, Minnesota was for an innocent purpose; that when she left Medford for Minneapolis she intended to return; that the return trip could not, therefore, be criminal and that the case is controlled by Mortensen v. U. S., 322 U.S. 369 [64 S.Ct. 1037, 88 L.Ed. 1331], and other cases", meaning

Oriolo v. U. S., 324 U.S. 824, 65 S.Ct. 683, 89 L.Ed. 1393; Fisher v. U. S., 4 Cir., 266 F. 667 and Smart v. U. S., 5 Cir., 202 F.2d 874.

The evidence on the trial was undisputed that Lila Lane had been in the town of Medford, Wisconsin prior to the transportation charged in Count two of the indictment and that her purpose in going from there to Minneapolis was to be home for Thanksgiving and to see her two year old daughter who lived in that city with Lila's mother. The evidence was also undisputed that when Lila Lane left Medford to go to Minneapolis she intended to return to Medford.

The case therefore parallels the Mortensen case to the extent that in both cases the transportation in issue was the return on a trip that was begun by a woman with the intention of going across state lines and coming back across them to the starting place.

But it appeared in the Mortensen case and the rationale of the decision there was that the whole trip upon which the women were transported across state lines by the defendants in their automobile was a vacation trip undertaken and consummated by all the parties to it as an innocent integrated transaction. Under the circumstances there present the Supreme Court declared that "The return journey * * * cannot be considered apart from its integral relation with the innocent round trip as a whole. There is no evidence of any change in the purpose of the trip during its course." [322 U.S. 369, 64 S.Ct. 1041.] The Supreme Court said of the return journey to Grand Island, Nebraska, where the trip had begun, "It differed in no respect from the other part, except in the direction of travel. That is not enough to make the first part innocent, the last part illegal. Criminal intent and purpose must be grounded on something less ingenious than that which is necessary to sustain a finding of such a purpose in making the return interstate journey to Grand Island."

It appeared to the trial court that in the case at bar the return trip which Lila Lane made from Minneapolis to Medford across state lines was not as a matter of law of the same innocent character as the return part of the vacation trip in the Mortensen case. In full recognition of the decision in that case the court instructed the jury: "If an interstate journey is planned and made without immoral purpose in mind at the time, no crime is committed." But whereas the return of the women to Grand Island in the Mortensen case appeared to have proceeded directly and without other inducement upon the plan and intention of all the parties formed at the outset of the vacation trip and their whole trip "was planned and made without immoral purpose in mind" the court considered that in the present case the evidence permitted a different inference to be drawn by the jury.

Here the evidence was that Lila Lane obtained employment as an exotic dancer at defendant's hotel and bar room in Medford, Wisconsin through a Minneapolis booking company at a salary of eighty dollars a week with room in the hotel and board. She performed her act there from November 2, 1953, until a few days before Thanksgiving (which fell on November 26). She then made the trip to Minneapolis for the purpose above stated and when she started from Medford she intended to return to that place. She left her dancing equipment in Medford with another exotic dancer whom defendant employed to carry on in her place. She testified that her dancing contract was not cancelled or terminated and had been extended by her and appellant to a period past Thanksgiving. But there is no evidence that she had a round trip ticket and she was not shown to have set or to have had in mind any date for her return to Medford. When she was in Minneapolis she telephoned the booking agent who had obtained her dancing contract. The agency was entitled to a ten per cent commission on her dance earnings which was paid up to November 28th. The agent testified that she told him that she did not know whether she wanted to go back or was going back at

that time or any more. He also said "that was the termination of our contract" "so far as our agreement and our contract was concerned, that was its termination." He also testified that the defendant called him by phone concerning Lila Lane and asked if she was coming back to work. The agent replied "I didn't know at the time because I hadn't had a definite understanding with Lila whether she as going back or not, she was uncertain herself." "So then [defendant] asked if I could get him somebody else."

The record then shows that the defendant telephoned Lila Lane at Minneapolis more than once. Though he was married and had two children he made protestations of love and desire for her and "begged her to come back and said he couldn't live without her, and all that, and that she just had to come back" "he promised to support both her mother and herself."

The defendant refrained as he had the right to do from taking the witness stand in his own behalf and the testimony as to his conduct towards Lila Lane after she went back to Medford came mainly from her. It fully sustained the charge of the indictment as to his purpose and intent in inducing her to make the railroad journey to him in interstate commerce. He paid the cost of her journey on the railroad to Eau Claire and $15.00 for the taxicab from there to Medford.

We hold that the evidence did not establish as a matter of law that Lila Lane returned to Medford from Minneapolis solely in pursuance of the intention to return with which she had started from Medford but that it was for the jury to say whether or not the defendant had knowingly induced her by his persuasions and enticements to go in interstate commerce to Medford for the purposes and with the intent on his part as charged in the indictment. The case presented by the evidence was plainly distinguishable from Mortensen v. U. S., supra, and the dependent cases.

In addition to his principal contention appellant has also argued that the court erred in the admission and rejection of evidence and in its attitude and remarks during the trial but our examination of the record has convinced us that these contentions are without merit. We think there was no testimony prejudicial to defendant erroneously admitted and none helpful to his defense erroneously excluded. The judgment is therefore

Affirmed.