UNITED STATES of America,
Plaintiff,

v.

Leevorne REESE, Defendant.

CR No. 65–82.

United States District Court
N. D. Ohio, W. D.

Jan. 7, 1966.

---

John G. Mattimoe, Asst. U. S. Atty., Toledo, Ohio, for plaintiff.

Harland Britz, Toledo, Ohio, for defendant.

DON J. YOUNG, District Judge.

The defendant Leevorne, alias Sonny, Reese was indicted on two counts of violation of the Mann Act. Title 18 U.S.C. Sec. 2421.

The first count charges that on or about the 30th day of July 1965, defendant transported a girl named Carole from Fort Wayne, Indiana to Toledo, Ohio for the purpose of prostitution, debauchery and other immoral purposes.

The second count is identical to the first count except that the woman involved is Marsha Reese.

The Government's evidence showed that about June 20th 1965, the defendant brought Carole and another girl named Phyllis from Fort Wayne to Toledo. At or about that time Marsha Reese was in jail in Toledo. There was testimony that defendant had stated before leaving Fort Wayne with Carole and Phyllis that he was "going to put them on the block". i. e., use them as prostitutes.

Phyllis ultimately left the defendant and Carole, and returned to Fort Wayne. Carole lived with defendant, and had sexual relations with him, until Marsha got out of jail. Carole testified she had discussed with defendant the idea of becoming a prostitute, but he at first told her not to. However, as soon as Marsha got out of jail, she set Carole to work as a prostitute, instructing her and supervising her activities. The money Carole received she paid over to Marsha, who paid it over to the defendant.

In early March of 1965 Marsha went through the form of a marriage with the defendant. The ceremony was performed in Toledo, Ohio, by the defendant's father, using a license obtained in Monroe, Michigan on the basis of false statements. At all times Marsha had a husband living, whom she had married in Medina, Ohio, and from whom she was not divorced.

Marsha had been cohabiting with the defendant, and working as a prostitute, turning over her earnings to defendant, since August 1964. She had first met defendant in June, 1964.

There was considerable testimony as to the details of the operations of the defendant and the two girls, which is of no great importance so far as the present charges are concerned.

The evidence showed that when Carole first came to Toledo with Phyllis and the defendant, she had not brought all her personal belongings.

Marsha testified that she got out of jail on July 8, 1965, and the next day, July 9th, started Carole in as a prostitute. She said that Carole acted as a prostitute because she had to; that she didn't want to, because she didn't put much effort into it; and that defendant required her to check on Carole.

About the end of July, according to Marsha, Carole "had worked her way up to going" back to Fort Wayne to get her personal effects. Marsha, Carole, and the defendant drove to Fort Wayne, Indiana. The defendant got out of the car, and the two women drove to Carole's house. Carole's parents were not at home, but she forced her way into the house and got shoes, clothes, a train case, bedspreads, and the rest of her personal belongings. She and Marsha then went back downtown, picked up defendant, and returned immediately to Toledo, Ohio.

It is this return trip to Toledo that is the sole basis for the two indictments.

The defendant claims that the defendant's operations were purely local to Toledo, and that the trip to Fort Wayne and return was merely an incident having no relation to the business. He relies on Mortensen v. United States, 322 U.S. 369, 64 S.Ct. 1037, 88 L.Ed. 1331 (1944), and other cases following that decision.

The Government contends that Mortensen is not applicable, because Carole needed her clothes in the business, and thus it cannot be said, as the Supreme Court said in the Mortensen case that the interstate round trip "was in no way related to the subsequent immoralities." Id. at 377, 64 S.Ct. at 1042.

However, attempts to distinguish the Mortensen case under circumstances closely similar to the present one have been stricken down by the Supreme Court. United States v. Oriolo, 146 F.2d 152 (3d Cir. 1944), reversed in a brief *per curiam* opinion, 324 U.S. 824, 65 S.Ct. 683, 89 L.Ed. 1393, (1945), and Becker v. United States, 217 F.2d 555 (8th Cir. 1954), reversed *per curiam* 348 U.S. 957, 75 S.Ct. 449, 99 L.Ed. 747 (1955). In Smart v. United States, 202 F.2d 874 (5th Cir. 1953), a case very similar upon its facts to the present case, the defendant's convictions were reversed upon the authority of Mortensen.

■■ It may well be, as the Government contends, that Carole would be better equipped to ply her trade by getting the rest of her wardrobe to Toledo from Fort Wayne. However, the Supreme Court says in its opinion in the Mortensen case:

"An intention that the women or girls shall engage in the conduct outlawed by Section 2 must be found to exist before the conclusion of the interstate journey and must be the dominant motive of such interstate movement." 322 U.S. at 374, 64 S.Ct. at 1040.

It is stretching the facts to the uttermost to find that the interstate movement had any real connection with the intention to engage in the outlawed conduct. To find that it was a "dominant motive" is impossible.

The Court is thus brought irresistibly to the conclusion that however reprehensible the defendant's conduct may have been, the facts fail to establish any violation of the law on or about July 30, 1965, and the defendant must be found "not guilty" as to both counts of the indictment.