**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert CLARK, Defendant-Appellant.**

**No. 20379.**

United States Court of Appeals,
Sixth Circuit.

Feb. 2, 1971.

---

Michael S. Friedman, Detroit, Mich., for defendant-appellant; I. Goodman Cohen, Neil H. Fink, Detroit, Mich., on brief.

James N. Raines, Asst. U. S. Atty., Memphis, Tenn., for plaintiff-appellee; Thomas F. Turley, Jr., U. S. Atty., Memphis, Tenn., on brief.

Before WEICK, EDWARDS and BROOKS, Circuit Judges.

EDWARDS, Circuit Judge.

Appellant was tried and convicted by a United States District Judge and jury in the United States District Court for the Western District of Tennessee on a one-count indictment charging that he transported a stolen car from Detroit, Michigan, to Memphis, Tennessee, knowing that it was stolen.

Competent evidence introduced at the trial disclosed the following facts. The investigation of the transaction which led to appellant's conviction was triggered in Memphis by an agent of the National Automobile Theft Bureau who discovered that Tennessee plates had been issued for a vehicle identification number which his list showed to be that of a wrecked car (henceforth salvage Cadillac A). The newly registered automobile—a 1968 Cadillac Coupe DeVille—was found in the possession of its new purchaser and examined by an FBI agent. The agent discovered that this automobile (henceforth stolen Cadillac A) had a "public" serial plate and motor number of the wrecked car, but the "se-cret"[1] identification numbers of another Coupe DeVille which had been stolen in Detroit. Careful inspection showed that the motor number had been changed.

The chain of title and possession was then traced back to a Memphis automobile dealer who testified that he had bought the Memphis car from appellant for $500 or $600 less than list price.

Subsequently, a Detroit detective discovered a wrecked Cadillac Coupe DeVille on a salvage lot with the public serial plate removed. On inspection of the secret identification numbers, this car was found to be salvage Cadillac A, whose public plate had reappeared in Memphis on the stolen Cadillac A.

The chain of title on salvage Cadillac A was traced from an owner in whose possession it had been wrecked, through the AAA which had settled the insurance claim for a totally wrecked vehicle, to a salvage lot owner who had sold it as salvage to appellant.

When salvage Cadillac A was discovered on a Detroit salvage lot, there was another wrecked Cadillac Sedan DeVille (henceforth salvage Cadillac B) situated next to it which also had its public serial plate removed. At appellant's trial, as proof of a common scheme and of appellant's intent, government proofs were introduced which paralleled those outlined above in all major respects, except that in this instance the stolen car, a Cadillac Sedan DeVille (stolen Cadillac B), ended up in the hands of a Hartford, Connecticut, purchaser. Appellant's role as seller of the stolen Cadillac B and buyer of salvage Cadillac B was identical in all major respects to his role concerning the Memphis car, except that there was no proof that he had transported the Hartford car across state lines.

Appellant testified in his own behalf at trial. He admitted the sales of the Memphis car and the Hartford car as outlined

---

1. Detective John Urish of the Detroit Police Department testified that a "secret identification number is "generally located in such a spot where it is not readily visible unless you crawl underneath the car * * * and it's quite difficult to locate this number." The detective also testified that location of the secret identification numbers was not made public by the manufacturers.

above. He admitted purchasing salvage Cadillac A and salvage Cadillac B, as referred to above, and he admitted driving the Memphis car from Detroit to Memphis. The net of his exculpatory testimony was that after purchasing the salvage cars, he had had them repaired and subsequently had received back from the repairmen the two stolen cars which he then sold, innocently thinking them to be the repaired salvage Cadillacs. Appellant was unable or unwilling to identify the repairmen or repair shops involved.

Over and above this undisputed evidence, the Detroit police detective who investigated the Detroit aspects of this case testified that at a time when he was not in custody and after being warned of his constitutional rights, appellant admitted transporting the Memphis Cadillac, knowing that it was stolen.

Appellant contends, first, that there was insufficient evidence to uphold the jury verdict of guilty and, secondly, that evidence pertaining to the Hartford Cadillac was improperly admitted, since appellant was not indicted for any offense directly connected with that car.

■ The proofs established (and, indeed, appellant admitted) his intimate connection with these two illegal transactions. These facts, plus testimony of appellant's confession of guilty knowledge, plus appellant's inability or refusal to identify the names and places which his attempted exculpation made relevant was more than ample evidence from which a jury could properly have inferred his guilt of transporting the Memphis Cadillac knowing it to have been stolen. United States v. Cook, 432 F.2d 915 (6th Cir. 1970); United States v. Stover, 411 F.2d 911 (6th Cir. 1969); Schwachter v. United States, 237 F.2d 640 (6th Cir. 1956).

■ Further, we feel that the use of "public" serial number plates on the two stolen Cadillacs, plus the fact that the two salvage Cadillacs from which the plates were taken were located side-by-side and the many parallel facts in both

transactions authorized admission of evidence pertaining to the Hartford Cadillac as establishing a common scheme and as bearing on appellant's motive and intent:

"Where intent and knowledge are essential elements of the crime for which a defendant is being tried, evidence of other transactions, even though criminal in nature, is admissible if the transactions are so connected with the offense charged that they serve to show a general pattern and to prove the necessary criminal intent or guilty knowledge. Schmeller v. United States, 6 Cir., 143 F.2d 544, 551; Richardson v. United States, 6 Cir., 150 F.2d 58, 63; Henderson v. United States, 9 Cir., 143 F.2d 681, 683." Kowalchuk v. United States, 176 F.2d 873, 878 (6th Cir. 1949).

See also Williams v. United States, 272 F.2d 40 (8th Cir. 1960); 29 Am.Jur.2d Evidence §§ 324, 326 (1967).

In fact, the only really significant question in this appeal is whether prosecutorial overkill which resulted in the jury hearing some inadmissible evidence also prejudiced appellant's cause so as to require reversal for new trial.

After developing the fact that salvage Cadillac A and salvage Cadillac B had been found side-by-side on a lot on Linwood Street in Detroit operated by a Charles Fields, the United States Attorney continued his examination as follows:

"Q (By Mr. Raines) Do you know where Charles Fields obtained the pieces of salvage?

"A Bob Clark.

"Q Is Charles Fields connected with Bob Clark?

"A He knows him.

"Q And how does he know him?

"A He knows him from—Well, he worked at a Shell Gas Station at—

"MR. McKNIGHT: (Interposing) Your Honor, I object to this line of examination, as to how he knows this man. This is something that probably

Clark told him on the thing. He don't know how these cars got there.

"THE COURT: Well, the objection to the testimony by the witness is to where Fields got the automobile?

"MR McKNIGHT: Yes, Your Honor.

"THE COURT: That could well be hearsay. You had better ask him how he knows that.

"Q (By Mr. Raines) How do you know where Fields got these?

"A My investigation disclosed that he obtained these from—

"THE COURT: (Interposing) Well, investigation how?

"Q (By Mr. Raines) Tell us, yes, tell us what you—

"A (Interposing) Well, after locating these cars at Mr. Fields' place of business, I conducted an investigation and learned that this one car, the Sedan DeVille, was previously at a Shell Gas Station where Mr. Fields worked and the other car, the Coupe DeVille, was at a click shop on 12th Street, which is a shop run by Mr. Clark's brother-in-law, and these cars were—

"MR McKNIGHT: (Interposing) If Your Honor please, at this particular time I think we ought to excuse the Jury and get into—

"THE COURT: (Interposing) Just a minute. I am going to sustain the objection. I think it appears to be hearsay, so, Members of the Jury, we will strike that. You won't consider the testimony as to where Fields got these two wrecks.

"Go ahead.

"Q (By Mr. Raines) Have you had occasion, sir to pick up stolen cars before at a service station owned by Mr. Clark?

"MR. McKNIGHT: Your Honor, I object to that as being immaterial.

"THE COURT: I didn't get the question.

"MR. RAINES: My question, Your Honor, was did the Detroit Police Department have the occasion previously to pick up stolen automobiles at the service station owned by Mr. Clark.

"THE COURT: I sustain the objection to that."

Thereupon the District Judge excused the jury and took extensive testimony outside its presence on the nature of the evidence which the United States Attorney was seeking to introduce. After determining to his satisfaction that there was no Miranda problem, (*See* Miranda v. Arizona, 384 U.S. 436 (1966)) the District Judge called the jury back and the following colloquy was admitted:

"THE COURT: All right, Mr. Raines.

"Q (By Mr. Raines) All right. Detective, right before the Jury was asked to leave, I directed a question to you concerning three other cars that you knew had been picked up from Robert Clark; did you question him concerning these cars?

"A Yes, sir.

"Q And what, if anything, did he say to you?

"A He said he obtained these cars from three unknown individuals who left the cars at his place of business and one of the salvaged cars, but did not receive any papers for these cars."

■ The District Judge admitted this last quoted material as bearing on common scheme and intent. In the context of this case we find no error in this ruling. Kowalchuk v. United States, 176 F.2d 873 (6th Cir. 1949).

■ We believe also, however, that as the District Judge ruled, and the government now concedes, the quoted colloquy preceding the exclusion of the jury did involve some inadmissible hearsay. But consideration of the total record, which we believe offered overwhelming proofs of appellant's guilt, convinces us that the inadmissible evidence did not substantially affect the right of appellant or constitute reversible error under Rule 52 of the Federal Rules of Criminal Procedure. Lutwak v. United States, 344

U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953); United States v. McMaster, 343 F.2d 176, 183 (6th Cir.), cert. denied, 382 U.S. 818, 86 S.Ct. 42, 15 L.Ed.2d 65 (1965).

We believe that what we have detailed of the proofs in the preceding opinion serves adequately to support this conclusion. The following trial exhibit, a photograph of the wrecked Cadillac which appellant contended he had caused to be repaired, lends further substance to our conclusion that the proofs of guilt were overwhelming.

[A3589]

The judgment of the District Court is affirmed.