**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**St. John TYLER, a/k/a Charles Lee
Tyler, Defendant-Appellant.**

**No. 71-1544.**

United States Court of Appeals,
Tenth Circuit.

May 17, 1972.

Rehearing Denied June 28, 1972.

Jack Speight, Asst. U. S. Atty., District of Wyoming, Cheyenne, Wyo. (Richard V. Thomas, U. S. Atty., and Tosh Suyematsu, Asst. U. S. Atty., District of Wyoming, Cheyenne, Wyo., on the brief), for plaintiff-appellee.

Jack R. Gage, Cheyenne, Wyo., for defendant-appellant.

Before PICKETT, HOLLOWAY and McWILLIAMS, Circuit Judges.

PICKETT, Circuit Judge.

Tyler appeals from a conviction on an indictment charging him with the interstate transportation of Velma Marie Powell for prostitution, debauchery and other immoral purposes in violation of the Mann Act, 18 U.S.C. § 2421. The principal questions presented on appeal are the denial of a motion for a continuance of the trial, and the admission in evidence of the testimony of the victim which was allegedly the result of information obtained by an unlawful search by local police officers.

At the trial Mrs. Powell testified that during the latter part of the year 1969 she and Tyler, together with Tyler's brother, traveled about the country in the brother's automobile. Upon arrival in Colorado Springs, Colorado, in December, 1969, she engaged in prostitution at the insistence of Tyler. Later she and Tyler traveled by automobile to Denver, Colorado, where acts of prostitution were committed. After a few days in Denver the couple moved on in the same car to Cheyenne, Wyoming, where they registered at a local motor court as man and wife. Mrs. Powell testified that following instructions of Tyler, she engaged in prostitution during the three or four weeks' stay in Cheyenne, and that she gave all the proceeds

to Tyler. All of these facts were admitted by Tyler except as to the prostitution of Mrs. Powell.

On January 20, 1970, two members of the Cheyenne Police Department, acting on information obtained from an informant, maintained a personal surveillance of Tyler and the motel room occupied by Tyler and his purported wife, principally for the purpose of determining if they were trafficking in marihuana and prostitution. When there were no immediate and significant developments, the city police officers, having information that the couple was not married, entered their room without a warrant and arrested them on a morals charge. A search of the room and an automobile used by the couple at that time produced no evidence of crime except the possession of two firearms by Tyler. The couple was taken to police headquarters where they were held for a short time on the morals charge and then released. Tyler and Mrs. Powell returned to their motel and remained there for a number of days before returning to Tyler's home in Colorado Springs, Colorado.[1]

During the month of March, 1970, an agent of the Federal Bureau of Investigation interviewed Mrs. Powell, at her living quarters in Colorado Springs, as to the whereabouts of Tyler. In July of the same year, she was again interviewed by an agent of the F.B.I. relative to her acts of prostitution on the January trip to Cheyenne. Thereafter, in November of 1970, the indictment in this case was returned by a Grand Jury in the United States District Court for the District of Wyoming.[2]

Tyler, who was then serving a sentence in a federal penitentiary, thereafter was transferred to Cheyenne, Wyoming, for trial, where on June 23, 1971 counsel was appointed to represent him

in this case. After arraignment on July 1, the case was set for trial on July 7. A motion for a continuance upon the ground that counsel did not have sufficient time to prepare a defense was denied. Pretrial motions to suppress evidence obtained and derived from the alleged illegal search by the Cheyenne police were sustained in part and denied in part.

■ The granting of a motion for a continuance of trial is within the sound discretion of the trial court and the action taken is subject to review only when there has been an abuse of that discretion. United States v. Ledbetter, 432 F.2d 1223 (10th Cir. 1970); United States v. Eagleston, 417 F.2d 11 (10th Cir. 1969); Warden v. United States, 391 F.2d 747 (10th Cir. 1968); Leino v. United States, 338 F.2d 154 (10th Cir. 1964). This case is concerned with one of the less technical kinds of Mann Act violations, the simple act of transporting a woman in interstate commerce for the purpose of prostitution. Counsel, immediately after his appointment, had access to the government files and knew that the principal witness necessary to establish the violation would be the victim of the unlawful transportation. The prosecution called only two witnesses. When the motion to suppress was heard, all the participants in the search were present and available as witnesses. The record does not disclose that the defense was hampered or prejudiced in any manner by the early trial date. To the contrary, it appears that Tyler was adequately represented by diligent and well-prepared counsel in the district court, as well as in this court. We find no abuse of discretion.

■ The motion to suppress the evidence prompted by the alleged illegal search of the motel room and automobile

---

1. At the time, Tyler was on bond pending the disposition of his appeal from a conviction in Colorado for violation of the Mann Act. See United States v. Tyler, 424 F.2d 510 (10th Cir. 1970), cert. denied, 400 U.S. 839, 91 S.Ct. 78, 27 L.Ed. 2d 73 (1970).

2. The indictment, in addition to the Mann Act charge, contained a count for the unlawful possession of firearms in violation of 18 U.S.C. § 922(h) and § 924(a). The motion to suppress as to the seizure of the guns was sustained and this count was dismissed.

by the Cheyenne police officers sought the suppression of testimony of the victim, Powell. It is argued that the admission of the Powell testimony was an exploitation of the information obtained by the illegal search, and therefore tainted and inadmissible under the "Fruit of the Poisonous Tree" doctrine. We recognize this doctrine, but the transcript does not sustain its application in this case.[3] The record is silent as to the activity of Mrs. Powell following her return to Colorado Springs from Cheyenne until she was interviewed in March. Apparently during the month of March, agents of the F.B.I. were interested in ascertaining the whereabouts of Tyler, who was then at large on bond following the Colorado conviction. It was not until July of 1970 that Mrs. Powell was interviewed by federal agents in regard to the trip from Colorado Springs to Cheyenne which had been made the preceding January. Her testimony at the trial was to the same effect as the statement given by her to the F.B.I. agents earlier. The record is completely devoid of evidence, direct or indirect, that the Cheyenne arrest and the information obtained from the search had any connection whatever with information later obtained from Mrs. Powell. Neither Mrs. Powell's identity nor the fact that she was transported to Wyoming by Tyler for the purpose of prostitution was established from the previous Cheyenne arrest. In Silverthorne Lumber Company v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920), referring to the exclusion of derivative evidence obtained by an unlawful search, the Court said:

"The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course this does not

mean that the facts thus obtained become sacred and unaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it in the way proposed."

This language is quoted with approval in Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). We find no basis for the exclusion of the Powell testimony.

The remaining contentions on appeal are that (1) the Mann Act is unconstitutionally vague, and (2) the defense of former jeopardy is available to the appellant. These contentions are without merit. There are few statutes that have been construed by courts more than the one involved here. So far as we are able to determine, no court has held the statute unconstitutional, including that portion which prohibits interstate transportation of any woman or girl "for any other immoral purpose." See Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917); Cleveland v. United States, 329 U.S. 14, 67 S.Ct. 13, 91 L.Ed. 12 (1946).

During the hearing on motions to suppress, there was evidence that Tyler and Mrs. Powell were arrested and charged with a violation of Cheyenne city ordinances relating to immorality. The final disposition of these charges is not reflected in the record. In any event, the city charges were not the same as those of the federal indictment which alleged the interstate transportation of a female for prostitution or immoral purposes. Different evidence would be necessary to sustain the two offenses. We said in Goldsmith v. Cheney, 447 F.2d 624, 627 (10th Cir. 1971), "the test for identity of offenses is whether the same evidence is required to sustain each offense." In Bell v. State of Kansas, 452

---

3. In Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), it was held that if evidence is "come at by the exploitation" of information obtained by an unlawful search, it shall be

excluded in evidence. See also Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

F.2d 783, 792 (10th Cir. 1971), it was said: "The double jeopardy provision applies when the offense to which it is interposed is the same as the former offense on which an individual was tried and convicted or acquitted." Cf. Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). Tyler has not been placed twice in jeopardy.

Affirmed.