UNITED STATES of America, Plaintiff,

v.

David Allen SIMMONS, et al.,
Defendants.

Crim. A. No. 3:84–00027.

United States District Court,
M.D. Tennessee,
Nashville Division.

March 21, 1984.

On Motion To Suppress
March 23, 1984.

On Motion To Sever March 27, 1984.

Memorandum Of Ruling
March 27, 1984.

On Posttrial Motion For Acquittal
April 18, 1984.

On Motion To Enter Order
Re Conspiracy May 1, 1984.

Derry Harper, Asst. U.S. Atty., Nashville, Tenn., for plaintiff.

Donald Dawson, Asst. Federal Public Defender, and Larry Woods, Nashville, Tenn., for defendants.

## ORDER

NEESE, Senior District Judge, Sitting by Designation and Assignment.

■ " * * * To justify a continuance for the purpose of locating a witness, the moving party must show that the witness would have given substantial favorable evidence and that he [or she] was available and willing to testify. * * * " *United States v. Boyd,* 620 F.2d 129, 132[8] (6th Cir.1980), *cert. den.* 449 U.S. 855, 101 S.Ct. 151, 66 L.Ed.2d 69 (1980). The prosecution has not met this burden.*

■ Accordingly, the motion of the prosecution for a continuance hereby is

DENIED, but without prejudice to its use of the procedure provided in Rule 48(a), F.R.Crim.P. *See United States v. Pope,* 574 F.2d 320, 327[5] (6th Cir.1978), *cert. den.* 436 U.S. 929, 98 S.Ct. 2828, 56 L.Ed.2d 774 (1978) (dismissal under Rule 48(a) is without prejudice to the bringing of a second indictment on the same charge).

## ON MOTION TO SUPPRESS

### I.

■ Each defendant seeks the suppression of identification-testimony of the proposed witness Ms. Carmen Rivers on the basis of an "unduly suggestive" pretrial identification by photograph. *See Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). It hereby is

ORDERED that these motions be deferred for determination at trial of the general issues, Rule 12(e), F.R.Crim.P., at which time the Court will hear, out of the presence of the jury, any pertinent evidence.

### II.

The defendants, each, moved for a severance and separate trial on the grounds of improper joinder under Rule 8, F.R.Crim.P. Those motions lack merit.

### A.

■ Under the Court's reading of the indictment herein, the offenses charged in each of the two counts of the indictment are based on the same act or transaction (or on two or more acts or transactions connected together or constituting parts of a common scheme or plan), such act(s) or transaction(s) being the transportation of a woman and motor vehicle in interstate commerce from Ohio to Tennessee on January 4, 1984. Thus, joinder of the two offenses

---

* It is said that when a *defendant* seeks a continuance to obtain witnesses, he " * * * must show who they are, what their testimony will be, that the testimony will be competent and relevant, that the witnesses can probably be obtained if the continuance is granted, and that due diligence has been used to obtain their attendance. * * * " 3A Wright, Federal Practice and Procedure: Criminal 256, § 832. Certainly the prosecution, which decides when the prosecution will commence, should be held to this standard at a minimum.

was permissible under Rule 8(a), F.R. Crim.P.

### B.

■ By like token, both defendants are charged in count 1 thereof with having participated in the same act or transaction (or in the same series of acts or transactions) constituting an offense, such act or transaction (or series of acts or transactions) being the transportation of a woman in interstate commerce from Ohio to Tennessee. Therefore, joinder of the defendants in this indictment was proper under Rule 8(b), F.R.Crim.P.; *United States v. Hatcher*, 680 F.2d 438, 441[3] (6th Cir. 1982).

### C.

■ Neither defendant has met his burden of demonstrating the likelihood of substantial prejudice from a joint-trial, so as to warrant a discretionary-severance under Rule 14, F.R.Crim.P. The charges herein are simple and straightforward, and there is no reason to believe the jurors might be confused or unable to limit evidence to only one defendant when necessary.[1] " * * * The jury must be presumed capable of sorting out the evidence and considering the case of each defendant separately. * * * " *United States v. Frazier*, 584 F.2d 790, 795[8] (6th Cir.1978).

Mr. Simmons' bare assertion, that he desires to testify at the trial of count 1 but not at the trial of count 2, is not sufficient to justify a severance of counts. For such relief, the movant must " * * * make a convincing showing both that he has important testimony to give concerning one count and a strong need to refrain from testifying on the other count." 1 Wright,

Federal Practice and Procedure: Criminal 785, § 222. " * * * An accused should show the specific testimony he will present about one offense, and his specific reasons for not testifying about others, to justify severance. * * * " *United States v. Bronco*, 597 F.2d 1300, 1303[4] (9th Cir.1979).

■ The motion of each defendant for a severance and separate trial hereby is

DENIED;[2] however, if at any stage of the joint-trial it should appear to the Court that substantial prejudice will result to either defendant from a joint-trial, the Court will grant relief therefrom. *United States v. Dugger*, 422 F.Supp. 1342, 1344[6] (D.C. Tenn.1976).

### III.

■ The motion of the defendant Mr. Simmons for the disclosure pretrial of the grand-jury testimony of the proposed government witness M. Rivers hereby is

DENIED. The movant will be entitled to such prior testimony after the witness has testified on direct-examination. Rule 26.-2(a), (f)(3), F.R.Crim.P.; 18 U.S.C. § 3500(b), (e)(3). The Congress barred any earlier inspection, 18 U.S.C. § 3500(a), and this Court may not circumvent such mandate. *United States v. Algie*, 667 F.2d 569 (6th Cir.1982).

### IV.

The defendant Mr. Johnson seeks a dismissal of the charge against him on the grounds that the Mann Act, 18 U.S.C. § 2421, is unconstitutional and the allegations of the indictment are insufficient to inform him fairly of the charge against which he must defend. His motion lacks merit.

---

1. " * * * The fact that evidence may be admissible against one defendant, but not against others, does not require separate trials. Such a situation is usually present in joint trials. * * " *United States v. Hoffa*, 349 F.2d 20, 43[36] (6th Cir.1965), *aff'd* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

2. The Court is advised informally that the prosecution is agreeable to a severance and separate-trial on each count of the indictment. The

matter of a severance, however, is committed to the discretion of the Court, *United States v. Goble*, 512 F.2d 458, 466[4] (6th Cir.1975), and, in exercising that discretion, the Court must bear in mind that judicial-economy and legitimate public-interests do not favor separate trials on separate counts in the absence of a showing of substantial prejudice. *See United States v. Dennis*, 625 F.2d 782, 801[70] (8th Cir.1980).

### A.

 The constitutionality of the Mann Act has been settled for more than 70 years. *Hoke v. United States*, 227 U.S. 308, 33 S.Ct. 281, 57 L.Ed. 523 (1913). " * * * The constitutional basis of the statute is the withdrawal of 'the facility of interstate transportation', though, to be sure, the power was exercised in aid of social morality. * * * "[3] *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 622[3], 99 L.Ed. 905 (1955). " * * * The power of Congress over the instrumentalities of interstate commerce is plenary; it may be used to defeat what are deemed to be immoral practices; and the fact that the means used may have 'the quality of police regulations' is not consequential. * * * " *Cleveland v. United States*, 329 U.S. 14, 19, 67 S.Ct. 13, 16, 91 L.Ed. 12 (1946).

As one Court stated:

* * * There are few statutes that have been construed by courts more than the one involved here. So far as we are able to determine, no court has held the statute unconstitutional, including that portion which prohibits interstate transportation of any woman or girl "for any other immoral purpose."

*United States v. Tyler*, 459 F.2d 647, 649 (10th Cir.1972), *cert. den.* 409 U.S. 951, 93 S.Ct. 297, 34 L.Ed.2d 223 (1972). If the Mann Act is to be declared unconstitutional, it will have to be done by a higher authority than this trial-Court.

### B.

 The allegations of count 1 are sufficient: they set forth the offense charged in the language of the statute and each element of the crime is averred. *Hamling*

*v. United States*, 418 U.S. 87, 117–118, 94 S.Ct. 2887, 2907[23], 41 L.Ed.2d 590 (1974).

If Mr. Johnson needed more specification of what the prosecution claims he did, he could have sought a bill of particulars under Rule 7(f), F.R.Crim.P. His motion hereby is

DENIED.

### V.

 The motion of the defendant Mr. Johnson, for an extension, through March 25, 1984, in which to file an additional; pretrial motion, hereby is

DENIED. Were such an extension granted, the Court would have no time available in which to consider such a motion.

### ON MOTION TO SEVER

Immediately prior to the commencement of trial herein, counsel for both defendants made further representations in support of their respective contentions that the Court should sever each count and grant 3 separate trials herein.* Not finding a likelihood that either defendant would suffer substantial prejudice from their joint-trial, the Court overruled the renewed motions, although the matter will be held open and subject to revision at any time throughout the joint-trial.

 It was represented on behalf of Mr. Simmons that he desired to testify as to count 1, but not as to count 2 of the indictment. Counsel stated the general nature of the testimony he anticipated from his client on count 1, but gave no specifics as to why Mr. Simmons felt a need to refrain from testifying on count 2, it being stated merely that Mr. Simmons was not in

---

**3.** A primary purpose of the Mann Act was to protect women who were weak from men who were bad. *Wyatt v. United States*, 362 U.S. 525, 530, 80 S.Ct. 901, 904[9], 4 L.Ed.2d 931 (1960). " * * * [T]he Act reflects the supposition that the women with whom it sought to deal often had no independent will of their own, and embodies, in effect, the view that they must be protected against themselves. * * * " *Id.*

* The prosecuting attorney represented that his evidence would reflect a common-plan or jointventure of the 2 defendants to transport a woman in interstate commerce for the purpose of prostitution, and that such act of transportation involved a stolen motor vehicle. This confirms the Court's reading of the indictment, upon which it based its conclusion: that joinder of defendants and offenses was proper herein under Rule 8(a), (b), F.R.Crim.P.

a position to testify on such latter count and would invoke his right under the Constitution, Fifth Amendment, not to be compelled to incriminate himself. Under these circumstances, the Court was not able to conclude that Mr. Simmons had a strong need to refrain from testifying on such 2d count so as to justify a severance and separate-trial on each offense. *See* 1 Wright, Federal Practice and Procedure: Criminal 785, § 222.

In support of his request for a severance, Mr. Johnson asserted his desire to call his codefendant Mr. Simmons as a witness in his behalf which he might not be able to do in a joint-trial. The grant of a severance on this ground is not favored, and the moving party must make an adequate showing of prejudice to justify disregarding the general rule favoring a joint-trial for persons jointly-indicted. *United States v. Vaughn,* 422 F.2d 812, 814[3] (6th Cir.1970). Thus,

"* * * [i]n order to be entitled to a severance on the ground urged, the movant must demonstrate: (1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the co-defendant will in fact testify if the cases are severed. * * *"

*United States v. Butler,* 611 F.2d 1066, 1070[10] (5th Cir.1980), *cert. den.* 449 U.S. 830, 101 S.Ct. 97, 66 L.Ed.2d 35 (1980). Such a demonstration was not made.

### MEMORANDUM OF RULING

The prosecution offered evidence that in November, 1983 a 1972 Cadillac automobile was stolen (at gun-point) by the defendant Mr. Simmons, who is charged in count 2 of the indictment with unlawfully transporting such a motor vehicle in interstate commerce. The Court admitted such evidence over the objection of counsel for Mr. Simmons and instructed the jury contemporaneously as to the limited purpose for which such evidence could be considered. A similar cautionary instruction will be given in the Court's final charge to the jury.

To establish a violation of 18 U.S.C. § 2312, "* * * the Government must prove (1) that a motor vehicle was stolen, (2) that the defendant transported that vehicle in interstate commerce, and (3) that the defendant knew the vehicle was stolen at the time of its interstate transport. * * *" *United States v. Maffei,* 450 F.2d 928, 930[4](6th Cir.1971), *cert. den.* 406 U.S. 938, 92 S.Ct. 1789, 32 L.Ed.2d 138 (1972). "* * * Knowledge of the stolen character of the automobile is an essential element of the offense charged [against Mr. Simmons in count 2]. * * *" *United States v. Chitwood,* 457 F.2d 676, 679[6] (6th Cir. 1972), *cert. den.* 409 U.S. 858, 93 S.Ct. 141, 34 L.Ed.2d 103 (1972).

The evidence of the theft of the aforementioned motor vehicle was not rendered inadmissible by Rule 404(b), F.R. Evid.[1] Such evidence was not offered, or admitted, to prove the character of Mr. Simmons to show that he acted in conformity therewith. Instead, this evidence was offered and admitted to prove directly the existence of 2 essential elements of the offense charged in count 2 of the indictment, namely, that the Cadillac was stolen and that Mr. Simmons knew it was stolen.[2] "* * * It would be difficult to perceive

[1] "* * * Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Rule 404(b), *supra.*

[2] Mr. Simmons did not offer to stipulate the existence of these elements and did not suggest any alternative method by which the prosecution might meet its burden of establishing either such element. "* * * 'Faced with a plea of not guilty, the prosecution is under no obligation to wait and see whether the defendant argues the non-existence of an element of the crime before the prosecution presents evidence establishing that element.' * * *" *United States v. Hamilton,* 684 F.2d 380, 384 (6th Cir.1982), *cert. den.* 459 U.S. 976, 103 S.Ct. 312, 74 L.Ed.2d 291 (1982), quoting *United States v. Buchanan,* 633 F.2d 423, 426 (5th Cir.1980), *cert. den.* 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 301 (1981). "* * * Indeed, the government has an affirmative burden to prove every element of the crime beyond a reasonable doubt. * * *" *Id.*

evidence any more probative of knowledge on the part of [Mr. Simmons] that the [motor vehicle] had been stolen than evidence that he himself had participated in the theft * * *." *United States v. McCarthy,* 473 F.2d 300, 303[2] (2d Cir.1972).

## ON POSTTRIAL MOTION FOR ACQUITTAL

The jury found both defendants herein guilty as charged in the first count of the indictment; the defendant Mr. Robert C. "(Junnie")" Johnson interposed timely a motion for a posttrial entry of a judgment of his acquittal. Rule 29(c), F.R.Crim.P. Mr. Johnson claims the evidence adduced on the trial herein was insufficient to prove his guilt beyond a reasonable doubt.

The undersigned trial-judge

"* * * must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. * * *"

*Curley v. United States,* 160 F.2d 229, 232–233 (D.C.Cir.1947), *cert. den.,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947), *reh. den.,* 331 U.S. 869, 67 S.Ct. 1729, 91 L.Ed. 1872 (1947). This is "* * * the prevailing criterion for judging motions for acquittal in federal criminal trials." *Jackson v. Virginia,* 443 U.S. 307, 318, n. 11, 99 S.Ct. 2781, 2789, n. 11, 61 L.Ed.2d 560 (1979).

Mr. Johnson admitted in his testimony that, on or about January 4, 1984, within this District and elsewhere, he participated knowingly with his codefendant in the transportation of Ms. Carmen Rivers, a woman, in interstate commerce from Columbus, Ohio to Nashville, Tennessee. There was abundant evidence before the jury that such woman was thus transported by someone(s) for the purpose of prostitution, debauchery or another immoral purpose. 18 U.S.C. §§ 2, 2421 (the Mann Act).

It was essential that such interstate transportation by Mr. Johnson have had as its object or have been the means of effecting or facilitating the activities proscribed by the Mann Act. *Mortensen v. United States,* 322 U.S. 369, 374, 64 S.Ct. 1037, 1045[5], 88 L.Ed. 1331 (1944). His intention that Ms. Rivers would engage in the conduct outlawed thereby must have been found to have existed "* * * before the conclusion of the interstate journey * * *" and that purpose must have been shown to have been "* * * the dominant motive of such interstate movement. * *" *Id.*

Furthermore, such transportation must have been designed by Mr. Johnson to bring-about such result. "* * * Without that necessary intention and motivation, immoral conduct during or following the journey is insufficient to subject the transporter [Mr. Johnson] to the penalties of the Act. * * *" *Id.*

The specific-intent of Mr. Johnson, to commit the serious charge charged against him, must have been proven before he could have been convicted; this required more than his general-intent to assist in such interstate transportation of Ms. Rivers; unless he did an act which the law forbade, intending with evil motive or bad purpose either to disobey or to disregard the law, he could not have been found to have acted as charged with specific-intent, *i.e.,* to have acted wilfully. *United States v. Curtis,* 430 F.2d 1159, 1161[2] (6th Cir. 1970), *cert. den.,* 401 U.S. 915, 91 S.Ct. 894, 27 L.Ed.2d 815 (1971), *reh. den.,* 401 U.S. 1004, 91 S.Ct. 1238, 28 L.Ed.2d 540 (1971). Intent ordinarily may not be proved directly, because there is no way of fathoming or scrutinizing the operations of the human mind; but, the jury might have inferred Mr. Johnson's intent from the surrounding circumstances and could have considered properly any statement(s) made by him and all other facts and circumstances in evidence which indicated Mr. Johnson's state-of-mind. *United States v. Reeves,* 594 F.2d 536, 541[3] (6th Cir.1979), cited in *United States v. Gaines,* 594 F.2d 541, 544[1] (6th Cir.1979).

Mr. Johnson and his codefendant and Ms. Rivers visited a night-club in Columbus; were joined there subsequently by Ms. Cheryl Stroud (who appeared from Ms. Rivers' observations to be the girl friend of Mr. Johnson); and, although Ms. Rivers' children were under the care momentarily of a baby sitter, the trio proceeded to Dayton, Ohio. There, they were joined by two additional females.

This sextet proceeded South out of Dayton, but one of the added females departed the vehicle the codefendant was driving while it was stopped for a traffic-light there, and she was seen no more. Ms. Rivers protested that it was necessary for her to return immediately to her residence in Columbus but was told by such codefendant: "Shut-up, Bitch; I know what I'm doing." These five persons proceeded by motor-vehicle to Louisville, Kentucky, stopping en route for gasoline, for which Mr. Johnson paid.

Mr. Johnson registered for himself only at a motel in Louisville in early-morning hours, but all five in the party utilized his room; he paid the clerk for the room. During the ensuing daylight-hours, Ms. Rivers was provided with an ample supply of rubber-contraceptives. These five persons then drove to a certain street corner in Louisville where the three females were "put on the tracks" to solicit prostitution. Ms. Rivers and Ms. Stroud proceeded so to do, but the third female entered another automobile soon after and likewise was seen no more. Mr. Johnson and his codefendant were in the automobile driven by the latter when the three women were "put on the tracks" and returned in the same vehicle when the remaining two women were retrieved from the streets.

During some of the trip from Columbus to Nashville, Mr. Johnson drove the automobile which had been provided by his codefendant. Arriving in Nashville during nighttime, Mr. Johnson and his codefendant again put Ms. Rivers and Ms. Stroud "on the tracks". Mr. Robert Dixon and two other men saw these two women on the street in the lower-Broadway area of this city, waved to them; one or both of them waved in return, and the five joined company. During this meeting, Mr. Johnson and his codefendant were lurking nearby in the automobile driven by the latter. Ms. Rivers contacted relatives back in Columbus by telephone who arranged for police of Metropolitan Nashville-Davidson County, Tennessee to "rescue" her from Mr. Johnson and his codefendant; thereupon, she returned home.

These two men and Ms. Stroud proceeded through Alabama and into Florida thereafter, stopping in Birmingham. Some three days afterward, Ms. Johnson and Ms. Angie Johnson, the common-law wife of Mr. Johnson, joined the group in the Miami area. The group then proceeded to Tampa and eventually back to Birmingham. Mr. Johnson was arrested on this charge in Birmingham on or about February 8, 1984, more than a month after he had departed Columbus.

Mr. Johnson testified that he had no purpose or intent whatever to transport Ms. Rivers from Columbus to Nashville with the object of her prostituting herself; he said he is a professional boxer and wanted to get to Florida to train with a more experienced fighter whom he knew and made the trip with his codefendant merely as a means of getting there to achieve that objective. Under proper instructions, the jury rejected his statement of his purpose and intent and found from the evidence that he did acts violative of the Mann Act, *supra,* intending specifically with bad purpose to violate the law directly or by aiding and abetting his codefendant's violation of it.

The purpose and intent of Mr. Johnson constituted " * * * a question of fact which must [have] be[en] [and was] submitted to the jury * * *," *Morissette v. United States,* 342 U.S. 246, 274, 72 S.Ct. 240, 255[10], 96 L.Ed. 288 (1952). " * * * The Anglo-Saxon tradition of criminal justice, embodied in the United States Constitution and in federal statutes, makes jurors the judges of the credibility of testimony offered by witnesses. It is for them,

generally, * * * to say that a particular witness spoke the truth or fabricated a cock-and-bull story. * * *" *United States v. Bailey,* 444 U.S. 394, 414–415, 100 S.Ct. 624, 637[19], 62 L.Ed.2d 575 (1980).

" * * * '[I]n a criminal case, the law assigns [the fact finding function] solely to the jury.' *Sandstrom v. Montana,* 442 U.S. 510, 523, 99 S.Ct. 2450, 2459, 61 L.Ed.2d 39 (1979). The jury is the conscience of society and its role in a criminal prosecution is particularly important. *Duncan v. Louisiana,* 391 U.S. 145, 156, 88 S.Ct. 1444, 1451, 20 L.Ed.2d 491 (1968). * * *" *United States v. Bailey, supra,* (dissenting opinion), 444 U.S. at 435, 100 S.Ct. at 647.

█ The evidence left little doubt that the codefendant of Mr. Johnson was a pimp at the pertinent times and violated directly in this instance the Mann Act, *supra.* We are left to speculate whether the jury found Mr. Johnson guilty directly also of such a violation or found him guilty on the basis that his codefendant violated such Act, *supra,* and that Mr. Johnson aided and abetted such violation. The effect is the same as to Mr. Johnson in either such event. *See Standefer v. United States,* 447 U.S. 10, 26, 100 S.Ct. 1999, 2009, 64 L.Ed.2d 689 (1980).

In the latter event, there was evidence from which the jury could have found beyond a reasonable doubt that Mr. Johnson associated himself with his codefendant's venture, participated in it as in something he (Mr. Johnson) wished to bring about, and sought by some action of his to make it succeed. *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 769[4], 93 L.Ed. 919 (1949). The movant asserts the " * * * only substantial evidence against * * * [him] * * * on the issue of intent was the testimony of Carmen Rivers that defendant Johnson purchased the prophylactics in Louisville. * * * This sole incident in Louisville does not qualify" as evidence of specific-intent to commit the crime charged against him, " * * * formed before the parties crossed the state lines * * *." It is evidently overlooked by the movant

that such provision of these devices by Mr. Johnson or in his presence occurred before the pertinent party crossed the Kentucky-Tennessee state-line; furthermore, it was for the jury to decide whether such evidence "qualified" as evidence of Mr. Johnson's specific-intent. *Gunning v. Cooley,* 281 U.S. 90, 94, 50 S.Ct. 231, 233[3], 74 L.Ed. 720 (1930) ("Issues that depend on the credibility of witnesses, and the effect or weight of the evidence, are to be decided by the jury"), cited in *Wilkie v. Brooks,* 515 F.2d 741, (dissenting opinion at) 750, n. 6 (6th Cir.1975).

In addition, evidence of Mr. Johnson's conduct and statements subsequent to the criminal acts charged in the first count of the indictment reflected his purpose, specific-intent and knowledge during the whole journey: It was Mr. Johnson's defense that any prostitution purposes of the trip were all his codefendant's "doings" of which he had no knowledge.

However, from Florida, Mr. Johnson talked with his sister, Ms. Brenda Johnson, in Columbus by telephone and encouraged her to join him there; the telephone was then handed to Mr. Johnson's codefendant who, according to her version, agreed to a split of her income from prostitution with the latter when she came to Florida, Ms. Johnson being agreeable to that arrangement to pay for his "protection" of her in the pursuit of her former vocation. This testimony showed the " * * * 'general pattern' * * *" of the entire trip and tended " * * * 'to prove the necessary criminal intent [and] general knowledge.' * * *" *United States v. Clark,* 437 F.2d 942, 944[2] (6th Cir.1971); *accord: United States v. McDonald,* 576 F.2d 1350, 1356–1357, n. 10 (9th Cir.1978), *reh. den.,* (1978), *cert. den. sub nom. Stewart v. United States,* 439 U.S. 830, 99 S.Ct. 105, 58 L.Ed.2d 124 (1978).

From all which, it hereby is DETERMINED that, upon the evidence and under the *Curley* standard, *supra,* a reasonable mind might fairly conclude Mr. Johnson's

guilt beyond a reasonable doubt. His motion, therefore, hereby is

DENIED.

## ON MOTION TO ENTER ORDER RE CONSPIRACY *

The prosecution moved herein for the Court to enter *post*trial an order to the effect that a conspiracy between the defendants herein and others existed, " * * * thus rendering the statements of one defendant admissible against the other as a coconspirator[-]statement. * * * " Rule 801(d)(2)(E), F.R.Evid. Such motion is redundant and devoid of merit:

Both defendants were indicted on the charge of having, on or about January 4, 1984 within this District and other districts, transported knowingly in interstate commerce from Columbus, Ohio to Nashville, Tennesee, a woman named Ms. Carmen Rivers for the purpose of prostitution, debauchery, and other immoral purpose, or having aided and abetted the same. Any joint-violation by the defendants of the Mann Act, 18 U.S.C. § 2421, or aiding-and-abetting thereof, 18 U.S.C. § 2, concluded when such charged transportation in Nashville, Tennessee was consummated and Ms. Rivers returned from Nashville to Columbus.

"The implied-conspiracy" of the defendants, joined in count one of the indictment herein, was advanced by the prosecution in the context of its effort to introduce certain evidence relating to events *after* the defendants and a woman departed Nashville and visited Alabama and Florida as permitted by Rule 404(b), F.R.Evid. Such evidence was admitted, *see* memorandum of ruling of April 3, 1984 herein, on the basis, not of any "implied-conspiracy," but because the prosecution had shown the admission of such evidence satisfied the requisite showings of Rule 403, F.R.Evid.; a finding of the existence of a common-purpose or -scheme on the part of the defendants was unessential to the admission of such evidence.

This Court does not understand either *United States v. DeRoche,* 726 F.2d 1025 (5th Cir.1984), or *United States v. Holloway,* 731 F.2d 378 [1] (6th Cir., 1984), as standing for the proposition, urged by the prosecution, that a trial-judge is required to make a *post*trial ruling on the admissibility of coconspirator-statements where none was admitted on the trial: There was a reversal in *DeRoche, supra,* when the trial-judge *admitted* such statements; there was a remand in *Holloway, supra,* for a *post*trial finding by the trial-judge as to whether the test in *United States v. Enright,* 579 F.2d 980, 986 (6th Cir.1978), had been met before *admission* of testimony under the coconspirator exception to the hearsay rule; yet, this Court recognizes that " * * * a conspiracy need not be charged in order to introduce evidence under the co-conspirator exception. *See* Fed. R.Evid. 801(d)(2)(E)." *Ib.,* 579 F.2d at 985, n. 5.

The defendant Mr. Johnson testified he did not hear a statement by Mr. Simmons in Dayton, Ohio, en-route to Nashville, for Ms. Rivers to "Shut-up, Bitch, I know what I'm doing." He testified also that he was not present if Mr. Simmons made a statement in Louisville, Kentucky, en-route to Nashville, that he was " * * * putting on the tracks * * * " to solicit prostitution Ms. Rivers and two other women.

Thus, any purported statement by Mr. Simmons which might have been admissible clearly against Mr. Johnson would necessarily have been made by him after the defendants' transportation of Ms. Rivers into Nashville had come to an end and she had returned home. If there had been a common-plan or -scheme between Messrs. Simmons and Johnson to transport Ms. Rivers into Nashville for immoral purposes, that scheme or plan must be said to have *ended* when she made good her escape from the transporting-group in Nashville.

■ In a prosecution under the Mann Act, *supra,* such as this, the admission into

---

* Aff'd. 756 F.2d 453 (6th Cir.), per curiam; no. 84–5477 decided and filed March 6, 1985.

1. No. 83–1490, no. 84–1500, decided and filed April 13, 1984.

evidence over the defendants' continuing-objection thereto of Mr. Simmons' "coconspirator-statements" which were made in Alabama and Florida, *after* the termination of the alleged common -scheme or -plan of the defendants, would (certainly, in a close case) be serious error. *Cf. Krulewitch v. United States,* 336 U.S. 440, 442–443, 69 S.Ct. 716, 718[1], 93 L.Ed. 790 (1949); *accord: United States v. Sykes,* 305 F.2d 172, 176[9] (6th Cir.1962), *re'v'd.* on totally different grounds *sub nom. Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). This Court will not commit that error *post*trial.

■ This Court adjudicated, *see* memorandum opinion and order herein of April 18, 1984, that the evidence was sufficient for a reasonable mind to sustain Mr. Johnson's conviction under count one of the indictment beyond a reasonable doubt, whether as a violator of the Mann Act, *supra,* directly or as an aider-and-abettor of Mr. Simmons in his (the latter's) violation thereof. That conclusion was reached without allusion to any declarations of Mr. Simmons as a "coconspirator" of Mr. Johnson.

No purpose underlying the prosecution's motion is conceived except perhaps a desire to buttress its case against Mr. Johnson for purposes of any appeal, because it never became necessary under the proof for the Court to make the type of *Enright* finding contended for by the prosecution.[2] Accordingly, such motion hereby is

DENIED.

---

**2.** In fact, the Court declined to instruct the jury that it might consider the statements of one defendant against the other defendant, as was requested by the prosecution, and, instead told the jury that each defendant was to have his case determined " * * * from his own acts or statements * * *."