872 F.2d 1030
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Johnse NELSON, Defendant-Appellant.
 No. 86-1869.
 United States Court of Appeals, Sixth Circuit.
 April 21, 1989.
 
 Before NATHANIEL R. JONES, WELLFORD, and RALPH B. GUY, Jr., Circuit Judges.
 PER CURIAM.
 
 
 1
 Appellant-defendant, Johnse Nelson, was charged with and subsequently convicted of four counts of distributing hydromorphone. Defendant raises three issues which we find not to be persuasive, and we thus affirm the convictions.
 
 
 2
 In late 1985, FBI Agent David Wilson began an undercover investigation involving illegal sales of prescription drugs. The Agency received information that Nelson, the owner and manager of the Unique Urgent Medical and Diagnostic Center in Detroit, was issuing large numbers of fraudulent prescriptions. Wilson testified that he bought fraudulent prescriptions for Dilaudid, a brand name of hydromorphone,[1] on November 21, 1985, December 23, 1985, January 2, 1986, and February 25, 1986.[2]
 
 
 3
 On January 29, 1986, after Wilson had purchased three sets of prescriptions from Nelson, FBI agents executed a search warrant at defendant's clinic. They seized business records, but did not remove patient files or blank prescriptions. Nelson was arrested but later released.
 
 
 4
 On February 25, 1986, Nelson called Wilson and attempted to sell him more prescriptions. Wilson met Nelson and tape recorded the conversation while Nelson filled out four new prescriptions. Nelson told Wilson that "he didn't trust very many people, people were trying to get at him and that Sam and [Wilson] were the only people he was still dealing with in large quantities because he could deal with us straight up." He also discussed the fact that a search warrant had been executed at his clinic by the FBI and the DEA.
 
 
 5
 On April 22, 1986, an indictment was issued by the grand jury charging Nelson with unlawfully distributing controlled substances. Nelson was taken into custody on April 29, 1986. A magistrate refused to release Nelson on bond. Trial was set for June 23, 1986, and on May 12, defendant's trial counsel filed a motion for bond pending trial with the district court. On the afternoon of June 16, 1986, defense counsel allegedly learned for the first time that the trial had been rescheduled for June 18.
 
 
 6
 On the new trial date, defense counsel indicated that the rescheduling was making it difficult for him to arrange for witnesses because "I have been telling people that this trial would be Monday" (June 23). The court replied that it would assist counsel in subpoenaing witnesses and would not proceed if a crucial witness was missing. Defense counsel also stated that he was having a problem "coordinating my client with those witnesses." The court stated that it would allow defense counsel to meet with the witness and his client before each witness testified. Later that morning, the trial judge released Nelson on bond.
 
 
 7
 After the government had presented its proof, Nelson took the stand and denied that he was present at the times and places charged in the indictment. He presented a witness, Kevin Terrell, who then testified that Nelson was not at the clinic at 5:00 p.m. on December 23, 1985, and that he was with Nelson on the afternoon and evening of February 25, 1986. Both men testified that Lenette Washington and Wanda Walker, former clinic employees, could support the fact that Nelson was not at the clinic at 5:00 p.m. on December 23.
 
 
 8
 Following Terrell's testimony, defense counsel indicated that he wanted to call Washington, Walker, and Robert Haskins, a handwriting expert, but that he either had not been able to locate them or to procure their attendance. On the last day of trial he requested a continuance, which was denied. No proffer of what the witnesses would say was made, and no subsequent affidavits or tenders of proof were submitted.
 
 A. Ineffective Assistance of Counsel
 
 9
 The defendant claims that he was denied his sixth amendment right to effective assistance of counsel because his trial attorney failed to interview and subpoena the two alleged alibi witnesses and the handwriting expert. Alternatively, the defendant contends that his trial counsel's inadequate performance was due to (1) the trial court's delay in releasing the defendant on bond and acceleration of the trial date, or (2) to the trial attorney's lack of diligence.
 
 
 10
 Because a claim of ineffective assistance of counsel cannot be advanced without the development of facts outside of the original record, most courts hold that a defendant may not raise such a claim for the first time on direct appeal; instead, the defendant must pursue his claim in the trial court or in collateral proceedings. United States v. Hill, 688 F.2d 18, 21 (6th Cir.), cert. denied, 459 U.S. 1074 (1982). Without reaching the merits of the ineffective assistance of counsel claim, we hold that, under the circumstances, appellant does not appropriately raise the issue for resolution on direct appeal. The issue may, of course, be presented in a collateral proceeding.
 
 B. Denial of Continuance
 
 11
 Initially scheduled on Friday, June 23, 1986, the case was rescheduled to begin on Monday, June 18. For some unexplained reason, defendant's trial counsel allegedly received notice of this change only two days before the new trial date. Appellant has not demonstrated, however, that the rescheduling prejudiced his right to a fair trial. See United States v. Maybusher, 735 F.2d 366 (9th Cir.1984) (deciding that the defendant was not prejudiced in having 27 rather than 30 days to prepare for trial), cert. denied, 469 U.S. 1110 (1985); see also United States v. Van Dyke, 605 F.2d 220 (6th Cir.) (holding that the district court has wide discretion in the scheduling of a trial which should not be disturbed absent a manifest abuse of discretion), cert. denied, 444 U.S. 994 (1979).
 
 
 12
 On June 19, before the jury entered the courtroom, defense counsel advised the court that he had tried to obtain a handwriting expert, but that the expert was reluctant to testify. He requested another opportunity to contact the expert, and the court recessed. When court reconvened, the attorney did not report the results of his call or mention that he was having trouble locating other witnesses.
 
 
 13
 On the last day of the trial, defense counsel informed the court that although he had no witness other than Kevin Terrell to present, he wanted to call former clinic employees, Washington and Walker, and the handwriting expert, adding:
 
 
 14
 I spoke personally with Lenette Washington. I believe it was on Thursday of last week that she had indicated to me that she would appear.
 
 
 15
 I cannot explain their absence. We've been working at procuring it. We think we still may be able to do it.
 
 
 16
 Further, we have one more person who's indicated a willingness to come. He is an expert witness. He's indicated that he desires some more material than I could really provide at this time because all I have are xerox copies, which are not sufficient for that.
 
 
 17
 .............................................................
 
 
 18
 ...................
 
 
 19
 * * *
 
 
 20
 Your Honor, basically, I'm asking for a continuance.
 
 
 21
 A trial court is vested with broad discretion when considering motions for continuances, and its decision should not be overturned absent a showing that the ruling constitutes an abuse of discretion bringing about demonstrated prejudice. Lockett v. Arn, 740 F.2d 407 (6th Cir.1984), cert. denied, 478 U.S. 1019 (1986); United States v. Faulkner, 538 F.2d 724 (6th Cir.), cert. denied, 429 U.S. 1023 (1976); see also Morris v. Slappy, 461 U.S. 1 (1983); United States v. Garmany, 762 F.2d 929 (11th Cir.1985), cert. denied, 474 U.S. 1062 (1986). It is the responsibility of the moving party to demonstrate the need for a continuance. United States v. Polizzi, 801 F.2d 1543 (9th Cir.1986).
 
 
 22
 When a continuance is requested to obtain witnesses, the defendant must demonstrate that the witnesses are available, willing to testify, and that their testimony would be relevant and helpful on the issues. United States v. O'Neill, 767 F.2d 780, 784 (11th Cir.1985); United States v. Simmons, 610 F.Supp. 295 (M.D.Tenn.1984), aff'd in part, 756 F.2d 453 (6th Cir.1985). A court should consider
 
 
 23
 the diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of such testimony.
 
 
 24
 Bennett v. Scroggy, 793 F.2d 772, 774 (6th Cir.1986) (quoting Hicks v. Wainwright, 633 F.2d 1146, 1149 (5th Cir.1981)).
 
 
 25
 Defendant has not demonstrated that the trial court abused its discretion in denying the request for continuance in this case. With regard to the handwriting expert, defense counsel indicated that he was "extremely balky," and defendant had apparently not submitted original documents for analysis.
 
 
 26
 With regard to the two clinic employees, it is uncertain whether the defendant himself could have located the women even if a continuance had been granted.[3] At best, they may possibly have indicated an alibi for only a two indictment offense. It was obviously difficult for defendant to rebut his admissions on Wilson's tape recording. In short, the defendant has not demonstrated that the trial court's action amounted to an abuse of discretion.
 
 
 27
 C. Hydromorphone as a Schedule II Controlled Substance
 
 
 28
 The defendant asserts that hydromorphone is not a Schedule II controlled substance as charged in the indictment because it is not listed in 21 U.S.C. Sec. 812(c). Although hydromorphone is not listed in Sec. 812, Sec. 811 authorizes the Attorney General to add other drugs or substances to the schedules. See 21 U.S.C. Sec. 811. Under the Controlled Substance Act, the Attorney General has delegated his authority in this regard to the DEA. See United States v. Spain, 825 F.2d 1426, 1427 (10th Cir.1987). Hydromorphone was added to Schedule II by 21 C.F.R. Sec. 1308.12(b)(1). Accordingly, the defendant was properly charged with unlawful distribution of a controlled substance.
 
 
 29
 For the reasons stated above, the decision of the district court is AFFIRMED.
 
 
 
 [1]
 Hydromorphone is a strong narcotic pain medication. It is highly addictive and is generally reserved for treating terminal cancer patients
 
 
 [2]
 Wilson testified that Nelson wrote out the prescriptions himself, supplying fake patient names. He signed each prescription with the name Dale Dudley, a physician formerly employed by the clinic, and charged $75 per prescription
 
 
 [3]
 Appellate counsel argues that one reason defendant should have been released on bond earlier was to help locate alibi witnesses. Yet, when defendant was released, he could not locate the women, despite the fact that they were employed at his clinic, and he was personally acquainted with them